STATE OF CONNECTICUT *v.* PAUL OVECHKA
(AC 26077)

Bishop, Rogers and Hennessy, Js.

Argued November 15, 2006—officially released February 27, 2007

*Ruth Daniella Weissman*, special public defender, for the appellant (defendant).

*Margaret Gaffney Radionovas*, senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Nicholas J. Bove, Jr.*, senior assistant state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, Paul Ovechka, appeals from the judgment of conviction, rendered after a jury trial, of assault in the second degree in violation of General Statutes § 53a-60 (a) (2).[1] On appeal, the defendant claims that the evidence was insufficient to support the verdict because the state did not prove that

---

[1] General Statutes § 53a-60 (a) provides in relevant part: "A person is guilty of assault in the second degree when . . . (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument other than by means of the discharge of a firearm . . . ."

he used a dangerous instrument. We agree with the defendant and, therefore, reverse the judgment of conviction and remand the matter with direction to render judgment of not guilty.[2]

The following facts and procedural history are necessary for the resolution of the defendant's appeal. The defendant and Michael Rynich, a Bridgeport police officer, were next door neighbors.[3] Three separate incidents occurred between the neighbors resulting in charges being brought against the defendant. These incidents occurred on December 26, 2002, and June 10 and July 2, 2003. The July 2, 2003 incident, in which the defendant sprayed Rynich in the eyes with either pepper spray or weed killer after Rynich had entered the defendant's yard, is the incident we are concerned with in this appeal.

On July 23, 2003, the defendant was charged in an information[4] with assault in the third degree in violation of General Statutes § 53a-61 (a) (1) and breach of the peace in the second degree in violation of General Statutes § 53a-181 (a) (1), both in connection with an incident on December 26, 2002; public indecency in violation of General Statutes § 53a-186 (a) (2) in connection with an incident on June 10, 2003; and assault in the second degree in violation of § 53a-60 (a) (2) in connection with an incident on July 2, 2003. On September 10, 2003, following a jury trial, the defendant was found not guilty of assault in the third degree, breach of the peace in the second degree and public indecency,

---

[2] Although the defendant makes other claims challenging his conviction, because this claim is dispositive, we do not address his remaining claims.

[3] The defendant lived at 190 Lynn Place, located on the corner of Lynn Place and Barkley Street, and Rynich lived at 126 Barkley Street in Bridgeport. At the time of the trial, they had been next door neighbors for about four years.

[4] The charges originally had been brought in three separate files which, upon the state's motion, the court, *J. Fischer, J.*, joined for trial on September 5, 2003.

and guilty of assault in the second degree. On February 18, 2004, the court denied the defendant's written motion for both a judgment of acquittal and a new trial and sentenced the defendant to a term of five years imprisonment, execution suspended after twenty-eight months, with five years of probation. On December 10, 2004, the defendant appealed from the judgment of conviction. Additional facts will be set forth as necessary.

The defendant claims that there was insufficient evidence to support the verdict because the state did not prove that he used a dangerous instrument. Specifically, the defendant contends that the state failed to prove that the substance,[5] under the circumstances it was used, was capable of causing death or serious physical injury, and, therefore, it failed to prove, as it was required to, that the substance, as actually used, was a dangerous instrument. We agree.

Our standard of review is well settled when the sufficiency of the state's evidence is challenged after a conviction. "In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact . . . may draw whatever inferences from the evidence or facts established by the

---

[5] There was conflicting testimony regarding the substance that the defendant sprayed into Rynich's eyes. The defendant testified that he sprayed pepper spray, which had been in his pocket, at Rynich. The state introduced evidence to establish that the spray used was weed killer, which the defendant had been spraying on his property. We decline to determine whether sufficient evidence existed to establish whether pepper spray or weed killer was sprayed in Rynich's eyes. Regardless of the substance involved, the state did not prove that whichever substance was involved had the potential character of a dangerous instrument capable of inflicting physical injury.

evidence it deems to be reasonable and logical. . . . As we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Citations omitted; internal quotation marks omitted.) *State* v. *Berger*, 249 Conn. 218, 224–25, 733 A.2d 156 (1999).

To prove the defendant guilty of assault in the second degree pursuant to § 53a-60 (a) (2), the state was required to prove beyond a reasonable doubt that the defendant, with intent to cause a physical injury to Rynich, caused such injury to Rynich by means of a dangerous instrument. General Statutes § 53a-3 (7) defines " '[d]angerous instrument' " in relevant part as "any instrument . . . which, under the circumstances in which it is used . . . is capable of causing death or serious physical injury . . . ." General Statutes § 53a-3 (4) defines " '[s]erious physical injury' " as "physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ . . . ."

We turn now to the evidence elicited at trial, construed in the light most favorable to sustaining the verdict, from which the jury concluded that the defendant was guilty of assault in the second degree. The defendant conceded that he was on his lawn spraying weed killer on weeds, within the fence line of his property, when he saw Rynich leave his house and get into his vehicle. The jury also heard testimony from Rynich.

Rynich testified that when he stopped his vehicle at the stop sign near the defendant's property, he saw the defendant's wife. Because Rynich wanted to talk with the defendant's wife about the issues that had occurred between the defendant and himself, Rynich drove his car to the side of the road in front of the defendant's house and got out of his vehicle. Rynich walked onto the defendant's property. The defendant and Rynich exchanged insults. Rynich yelled to the defendant's wife about the defendant being crazy. The defendant sprayed Rynich in the eyes and face. The defendant retreated onto his porch and eventually into his house. Rynich continued to follow the defendant up to the defendant's front door, even after being sprayed in the face and eyes. The defendant sprayed Rynich for the last time when the defendant was inside his house. The defendant claims he sprayed pepper spray, which he had in his pocket. The state claims the defendant may have sprayed weed killer, which he had in his hands. The defendant testified that he intended to spray Rynich and that he did in fact spray Rynich. Rynich testified to severe pain and burning in the chest, neck, face and eyes along with temporary blindness. Rynich testified that he subsequently drove himself home. From this evidence, the jury could have found that the defendant intended to harm Rynich and that Rynich did suffer "physical injury," which is defined by statute as "impairment of physical condition or pain . . . ." General Statutes § 53a-3 (3). The state, however, did not proffer evidence sufficient to establish that the substance sprayed by the defendant was a dangerous instrument.

The state argues that "the severity of the injuries Rynich suffered permitted the jury to infer that Rynich's injuries were attributable to weed killer and that weed killer was a 'dangerous instrument.' " A review of the record reveals that the state did not provide sufficient

evidence to establish that Rynich suffered serious injuries.[6] Rynich testified that he had burns on his face, neck and chest. On the day of the incident, Sergeant Melody Pribesh of the Bridgeport police department saw Rynich at the emergency room at St. Vincent's Hospital in Bridgeport and observed that he was "fiery red, burnt . . . from the waist up in his face, and his eyes were very irritated, red and swollen and tearing." Jeffrey Pellenberg, the physician who treated Rynich at the emergency room, testified that Rynich complained of eye irritation and of skin redness and burning. Pellenberg described the redness as skin irritation and testified that Rynich complained of his skin burning. Although there was testimony to establish that Rynich suffered eye irritation as well, the facts show that Rynich, after being sprayed, was able to follow the defendant as well as drive himself home at the end of the incident. The evidence proffered by the state established only that Rynich suffered physical injury, i.e., skin and eye irritation, not serious physical injury. Therefore, the jury reasonably could not have concluded that the severity of Rynich's injuries was consistent with the defendant having sprayed Rynich with a "dangerous instrument."

The state also argues that the manner in which the defendant used the spray made the instrument a dangerous instrument. Our cases have recognized, and experience has shown, that almost an infinite number of seemingly innocuous implements can, by the circumstances and manner of their use, become dangerous instruments. See, e.g., *State* v. *Prat*, 66 Conn. App. 91,

---

[6] We note that the state need prove only that the victim suffered physical injury to prove assault in the second degree. See General Statutes § 53a-60 (a) (2). The state, however, must prove that a dangerous instrument was used. Because a dangerous instrument is an instrument with the potential for causing serious physical injury, if the state had provided evidence that the spray, in the circumstances in which it was used, did in fact cause serious physical injury, the state necessarily would have proven that the defendant used a dangerous instrument in the assault.

102–103, 784 A.2d 367 (2001) (baseball bat); *State* v. *Pierce*, 64 Conn. App. 208, 214, 779 A.2d 233 (2001) (crowbar); *State* v. *Barnett*, 53 Conn. App. 581, 591, 734 A.2d 991 (metal vacuum cleaner pipe, screwdriver, ice pick, two by four, cane, scissors, television antenna), cert. denied, 250 Conn. 918, 738 A.2d 659 (1999). The recognition, however, that an otherwise innocuous instrument can become a dangerous instrument by the circumstances of the assault does not eliminate the state's burden of proving beyond a reasonable doubt that the circumstances were such that the instrument, as used in the case at hand, was a dangerous instrument. This the state did not do. In fact, the only evidence proffered by the state in this regard was that the defendant sprayed Rynich in the eyes and about the neck and face with the substance. This evidence, without more,[7] did not prove that it was a dangerous instrument, i.e., capable of causing death or serious physical injury.

We determine that on the facts construed in the light most favorable to sustaining the verdict, along with the inferences reasonably drawn therefrom, the jury reasonably could not have found the defendant guilty of assault in the second degree. There was not sufficient evidence that the defendant used a dangerous instrument in causing the injury. The defendant admitted that he intended to harm Rynich, which established beyond a reasonable doubt that the defendant intended to physically injure another person. Pellenberg, Rynich and

---

[7] The state argues in its brief that the ingredients listed on the container of the weed killer, which was a full exhibit at trial, would alert a reasonable person that the weed killer was a dangerous instrument, as used. In its brief, the state argued that one of these ingredients was a pesticide and another ingredient was an herbicide, and it supported this argument with citations to cases outside this jurisdiction. The state, however, did not introduce evidence to the jury of the nature or classification of specific ingredients in the weed killer. Also in its brief, the state argued that pesticides and herbicides are subject to extensive regulation in Connecticut because of their potentially harmful uses. This evidence, however, was not before the jury.

Pribesh testified that Rynich was physically injured, which established beyond a reasonable doubt that the defendant caused injury to his intended victim. The state, however, never demonstrated facts showing that the instrumentality that the defendant used and the manner in which it was used was capable of causing death or capable of causing serious physical injury. We conclude that the evidence was insufficient to establish one of the necessary elements of assault in the second degree, namely, that the spray, as used, was a dangerous instrument. Accordingly, the evidence was insufficient to support the defendant's conviction of assault in the second degree.

The judgment is reversed only as to the charge of assault in the second degree and the case is remanded with direction to render judgment of not guilty on that charge. The judgment is affirmed in all other respects.

In this opinion BISHOP, J., concurred.

ROGERS, J., dissenting. I respectfully dissent from the majority's conclusion that there was insufficient evidence to support the verdict because the state did not prove that the defendant, Paul Ovechka, used a dangerous instrument. When construing the evidence in the light most favorable to sustaining the verdict, I believe that there was sufficient evidence from which the jury reasonably could have concluded that the substance with which the defendant sprayed the victim, Michael Rynich, was, under the circumstances in which it was used, a dangerous instrument capable of causing serious physical injuries. The jury reasonably could have concluded that the dangerous instrumentality requirement was fulfilled because there was sufficient evidence from which it could find that Rynich did, in fact, suffer serious physical injuries.[1]

---

[1] See footnote 6 in the majority opinion.

A "dangerous instrument" is defined as "any instrument, article or substance which, under the circumstances in which it is used . . . is capable of causing death or serious physical injury . . . ." General Statutes § 53a-3 (7). "Serious physical injury" is defined as "physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or *serious loss or impairment of the function of any bodily organ* . . . ." (Emphasis added.) General Statutes § 53a-3 (4). "[T]he language of § 53a-3 (7) indicates that the actual use of an item in a manner capable of causing serious physical injury renders the item a dangerous instrument." *State* v. *Ramos*, 271 Conn. 785, 794, 860 A.2d 249 (2004). "[E]ach case must be individually examined to determine whether, under the circumstances in which the object is used or threatened to be used, it has the potential for causing serious physical injury." (Internal quotation marks omitted.) *State* v. *McColl*, 74 Conn. App. 545, 554, 813 A.2d 107 (feet and footwear can be dangerous instruments in some circumstances), cert. denied, 262 Conn. 953, 818 A.2d 782 (2003).

The first spray blinded Rynich, causing him to fall to the ground. Once Rynich returned to his feet, the defendant sprayed him in his eyes again, blinding him for a second time. Rynich testified that he had burns on his face, neck and chest, and no matter how much he washed, "it wasn't going away." Sergeant Melody Pribesh of the Bridgeport police department saw Rynich in a hospital emergency room and observed that he was "fiery red, burnt . . . from the waist up in his face, and his eyes were very irritated, red and swollen and tearing." After treating Rynich in the emergency room, Jeffrey Pellenberg, a physician, diagnosed Rynich with chemical conjunctivitis and chemical dermatitis. Pellenberg testified that "clearly, he was sprayed with some type of substance that was clearly irritative to his

eyes and skin." The burning sensation on Rynich's neck lasted two or three days, and he had blurred vision for the remainder of the day on which he was sprayed.

The jury reasonably could have found that the injuries suffered by Rynich, particularly those with respect to his eyes, constituted a serious physical injury. The jury reasonably could have found that a loss of vision in both his eyes, albeit temporarily, constituted a loss or serious impairment of the function of any bodily organ. General Statutes § 53a-3 (4) does not require that the impairment of an organ be permanent. *State* v. *Aponte*, 50 Conn. App. 114, 121, 718 A.2d 36 (1998), rev'd in part on other grounds, 249 Conn. 735, 738 A.2d 117 (1999); *State* v. *Rumore*, 28 Conn. App. 402, 415, 613 A.2d 1328, cert. denied, 224 Conn. 906, 615 A.2d 1049 (1992).

Despite the difficulty of drawing a precise line as to where "physical injury" leaves off and "serious physical injury" begins, in light of the evidence concerning the extent of the injuries sustained by Rynich, I cannot say as a matter of law that the jury could not reasonably have found that he suffered "serious physical injury." See *State* v. *Miller*, 202 Conn. 463, 489, 522 A.2d 249 (1987). I would conclude that there was sufficient evidence for the jury to find that the dangerous instrument element was satisfied and, consequently, would affirm the judgment as to that claim. I would have, therefore, proceeded to address the other issues raised by the defendant in this appeal.[2] See, e.g., *Connecticut*

---

[2] On appeal, the defendant also claims that (1) the court's instructions on assault in the second degree in violation of General Statutes § 53a-60 (a) (2) were inadequate, (2) he was deprived of his constitutional right to present a defense because no instructions were given on defense of property, defense of premises or defense of dwelling, (3) the court's instructions on self-defense failed to ensure that the state was required to disprove the defense beyond a reasonable doubt, (4) the evidence was insufficient to show that the state had disproved all available justification defenses beyond a reasonable doubt, (5) the court improperly excluded certain evidence from the jury room and (6) he was deprived of a fair trial by prosecutorial misconduct.

*National Bank* v. *Giacomi*, 233 Conn. 304, 351, 659 A.2d 1166 (1995) (*Borden, J.*, dissenting); *State* v. *Martin*, 98 Conn. App. 458, 474, 909 A.2d 547 (2006) (*Schaller, J.*, dissenting), cert. granted on other grounds, 281 Conn. 901, 916 A.2d 47 (2007).

For the foregoing reasons, I dissent, respectfully.