STATE OF CONNECTICUT *v.* PAUL OVECHKA
(SC 17895)

Norcott, Katz, Palmer, Vertefeuille, Zarella, Schaller and McLachlan, Js.*

---

* This case originally was argued before a panel of this court consisting of Justices Norcott, Palmer, Vertefeuille, Zarella and Schaller. Thereafter, the court, pursuant to Practice Book § 70-7 (b), sua sponte, ordered that the case be considered en banc. Accordingly, Justices Katz and McLachlan were added to the panel, and they have read the record, briefs and transcript of oral argument.

The listing of justices reflects their seniority status as of the date of oral argument.

Argued October 23, 2008—officially released July 14, 2009

*Margaret Gaffney Radionovas,* senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict,* state's attorney, and *Nicholas J. Bove,*

*Jr.*, senior assistant state's attorney, for the appellant (state).

*Ruth Daniella Weissman*, special public defender, for the appellee (defendant).

*Opinion*

NORCOTT, J. The dispositive issue in this certified appeal is whether there was sufficient evidence for a jury to find that a person assaulted with pepper spray had suffered " '[s]erious physical injur[ies],' " as defined by General Statutes § 53a-3 (4),[1] that would permit the inference that the spray was a " '[d]angerous instrument,' " as defined by General Statutes § 53a-3 (7).[2] The state appeals, upon our grant of its petition for certification,[3] from the judgment of the Appellate Court reversing the trial court's judgment convicting the defendant, Paul Ovechka, of assault in the second degree in violation of General Statutes § 53a-60 (a) (2).[4] *State* v. *Ovechka*, 99 Conn. App. 679, 680–81, 915 A.2d 926 (2007). We conclude that the Appellate Court's

---

[1] General Statutes § 53a-3 (4) provides in relevant part: " 'Serious physical injury' means physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ . . . ."

[2] General Statutes § 53a-3 (7) provides in relevant part: " 'Dangerous instrument' means any instrument, article or substance which, under the circumstances in which it is used or attempted or threatened to be used, *is capable of causing death or serious physical injury* . . . ." (Emphasis added.)

[3] We granted the state's petition for certification limited to the following issue: "Did the Appellate Court properly conclude that the state's evidence of the defendant's repeated spraying of the victim in the eyes, face, clothing and body with weed killer and/or pepper spray, and of the victim's eye and skin injuries, was insufficient to prove the use of a 'dangerous instrument' within the meaning of . . . § 53a-60 (a) (2) (assault in the second degree) and . . . § 53a-3 (7)?" *State* v. *Ovechka*, 282 Conn. 909, 922 A.2d 1099 (2007).

[4] General Statutes § 53a-60 (a) provides in relevant part: "A person is guilty of assault in the second degree when . . . (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or *a dangerous instrument* other than by means of the discharge of a firearm . . . ." (Emphasis added.)

determination that the evidence was insufficient to sustain a conviction of assault in the second degree in violation of § 53a-60 (a) (2) improperly invaded the fact-finding province of the jury. Accordingly, we reverse the judgment of the Appellate Court and remand this case to that court for consideration of the defendant's remaining claims on appeal.

The Appellate Court's opinion sets forth the following facts and procedural history. "The defendant and Michael Rynich, a Bridgeport police officer, were next door neighbors.[5] Three separate incidents occurred between the neighbors resulting in charges being brought against the defendant. These incidents occurred on December 26, 2002, and June 10 and July 2, 2003. The July 2, 2003 incident, in which the defendant sprayed Rynich in the eyes with either pepper spray or weed killer after Rynich had entered the defendant's yard, is the incident we are concerned with in this appeal." Id., 681.

With respect to the July 2, 2003 incident, "[t]he defendant conceded that he was on his lawn spraying weed killer on weeds, within the fence line of his property, when he saw Rynich leave his house and get into his vehicle. The jury also heard testimony from Rynich. Rynich testified that when he stopped his vehicle at the stop sign near the defendant's property, he saw the defendant's wife. Because Rynich wanted to talk with the defendant's wife about the issues that had occurred between the defendant and himself, Rynich drove his car to the side of the road in front of the defendant's house and got out of his vehicle. Rynich walked onto the defendant's property. The defendant and Rynich exchanged insults. Rynich yelled to the defendant's wife

---

[5] "The defendant lived at 190 Lynn Place, located on the corner of Lynn Place and Barkley Street, and Rynich lived at 126 Barkley Street in Bridgeport. At the time of the trial, they had been next door neighbors for about four years." *State* v. *Ovechka,* supra, 99 Conn. App. 681 n.3.

about the defendant being crazy. The defendant sprayed Rynich in the eyes and face. The defendant retreated onto his porch and eventually into his house. Rynich continued to follow the defendant up to the defendant's front door, even after being sprayed in the face and eyes. The defendant sprayed Rynich for the last time when the defendant was inside his house. The defendant claims he sprayed pepper spray, which he had in his pocket. The state claims the defendant may have sprayed weed killer, which he had in his hands. The defendant testified that he intended to spray Rynich and that he did in fact spray Rynich. Rynich testified to severe pain and burning in the chest, neck, face and eyes along with temporary blindness."[6] Id., 683–84.

"On July 23, 2003, the defendant was charged in an information[7] with assault in the third degree in violation of General Statutes § 53a-61 (a) (1) and breach of the peace in the second degree in violation of General Statutes § 53a-181 (a) (1), both in connection with an incident on December 26, 2002; public indecency in violation of General Statutes § 53a-186 (a) (2) in connection with an incident on June 10, 2003; and assault in the second degree in violation of § 53a-60 (a) (2) in

---

[6] The Appellate Court majority opinion, echoed by the dissent, then recites as a statement of fact: "Rynich testified that he subsequently drove himself home." State v. Ovechka, supra, 99 Conn. App. 684. In our view, this specific statement of fact is not a completely accurate reflection of the record herein, and the defendant does not recite it in his brief, either. Rynich did not testify on direct or cross-examination that he drove himself home after the attack but, rather, only that he "tried to get off of [the defendant's] property as quick as [he] could" and went home, where he called for medical assistance. Rynich did not testify specifically as to how he traveled home. The only testimony that Rynich had driven himself home after the attack came from the defendant's wife, Maria Ovechka, who testified that she saw Rynich retreat after being sprayed, jump in his truck, and back it around the corner of the block toward his own driveway.

[7] "The charges originally had been brought in three separate files which, upon the state's motion, the court, J. Fischer, J., joined for trial on September 5, 2003." State v. Ovechka, supra, 99 Conn. App. 681 n.4.

connection with an incident on July 2, 2003. On September 10, 2003, following a jury trial, the defendant was found not guilty of assault in the third degree, breach of the peace in the second degree and public indecency, and guilty of assault in the second degree. On February 18, 2004, the court denied the defendant's written motion for both a judgment of acquittal and a new trial and sentenced the defendant to a term of five years imprisonment, execution suspended after twenty-eight months, with five years of probation. On December 10, 2004, the defendant appealed from the judgment of conviction."[8] Id., 681–82.

The defendant raised numerous claims on appeal to the Appellate Court,[9] including that the evidence was insufficient to support his conviction of assault in the second degree in violation of § 53a-60 (a) (2) "because the state did not prove that he used a dangerous instrument" since it had "failed to prove that the substance,[10]

[8] The record reveals that the defendant no longer is incarcerated. Nevertheless, this appeal is not moot because practical relief remains available as a result of the collateral consequences attendant to a criminal conviction; see, e.g., *State* v. *McElveen*, 261 Conn. 198, 216 n.14, 802 A.2d 74 (2002); as well as the fact that he remains subject to a period of probation.

[9] The defendant also claimed on appeal that: "(1) the court's instructions on assault in the second degree in violation of . . . § 53a-60 (a) (2) were inadequate, (2) he was deprived of his constitutional right to present a defense because no instructions were given on defense of property, defense of premises or defense of dwelling, (3) the court's instructions on self-defense failed to ensure that the state was required to disprove the defense beyond a reasonable doubt, (4) the evidence was insufficient to show that the state had disproved all available justification defenses beyond a reasonable doubt, (5) the court improperly excluded certain evidence from the jury room and (6) he was deprived of a fair trial by prosecutorial misconduct." *State* v. *Ovechka*, supra, 99 Conn. App. 689 n.2 (*Rogers, J.*, dissenting).

[10] The Appellate Court noted that "[t]here was conflicting testimony regarding the substance that the defendant sprayed into Rynich's eyes. The defendant testified that he sprayed pepper spray, which had been in his pocket, at Rynich. The state introduced evidence to establish that the spray used was weed killer, which the defendant had been spraying on his property. We decline to determine whether sufficient evidence existed to establish whether pepper spray or weed killer was sprayed in Rynich's eyes. Regardless of the substance involved, the state did not prove that whichever sub-

under the circumstances it was used, was capable of causing death or serious physical injury . . . ." Id., 682. The Appellate Court agreed with the defendant in a divided opinion, and rejected the state's argument that "the severity of the injuries Rynich suffered permitted the jury to infer that Rynich's injuries were attributable to weed killer and that weed killer was a dangerous instrument." (Internal quotation marks omitted.) Id., 684. The Appellate Court majority further concluded that Rynich's burns on his face, neck and chest, and temporary blindness and eye irritation, did not constitute " '[s]erious physical injur[ies]' " under § 53a-3 (4), to justify the inference that the substance used was a " '[d]angerous instrument' " as defined by § 53a-3 (7). Id., 684–85. Accordingly, the Appellate Court rendered judgment reversing the defendant's conviction of assault in the second degree in violation of § 53a-60 (a) (2) and did not reach the remainder of the defendant's claims on appeal because it had directed the trial court to render a judgment of not guilty on that count. Id., 681 and n.2. This certified appeal followed. See footnote 3 of this opinion.

On appeal, the state claims that the Appellate Court improperly concluded that the evidence was insufficient to prove that the pepper spray; see footnote 10 of this opinion; that the defendant had sprayed on Rynich's eyes, face, clothing and body was a " '[d]angerous instrument' " within the meaning of §§ 53a-60 (a) (2) and 53a-3 (7). Specifically, the state, relying on the opinion of the dissenting Appellate Court judge, argues that the injuries that Rynich had incurred were serious physical injuries, which meant that the substance used

stance was involved had the potential character of a dangerous instrument capable of inflicting physical injury." *State* v. *Ovechka,* supra, 99 Conn. App. 682 n.5.

Because our decision in this certified appeal is based solely on the defendant's admitted use of pepper spray, it is not necessary to determine whether the defendant sprayed Rynich with weed killer as well.

clearly was "capable of causing serious physical injury,"[11] and that the Appellate Court's decision to the contrary resulted from its failure to view the evidence in the light most favorable to sustaining the jury's verdict. In particular, the state notes that Rynich had been blinded by the pepper spray, which also caused burns to his face, neck and chest that remained painful for several days and caused severe eye irritation and blurry vision for the rest of the day. In response, the defendant claims that Rynich's injuries did not rise to the level of serious physical injury, and also that pepper spray is not a dangerous instrument as a matter of common or medical knowledge. We conclude that the jury reasonably could have inferred that Rynich's injuries were serious physical injuries resulting from the use of a dangerous instrument, thus permitting it to convict the defendant of assault in the second degree in violation of § 53a-60 (a) (2).

"In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . [I]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with

[11] The state also notes that the jury reasonably could have found that the defendant had sprayed Rynich with Spectracide weed killer, in addition to, or instead of, pepper spray. The state then contends that the jury reasonably could have found, on the basis of its own knowledge and common sense, that weed killer is a toxic substance subject to wide regulation, and that it is a dangerous instrument. In light of our conclusion herein based solely on the defendant's admitted use of pepper spray; see footnote 10 of this opinion; we need not address these claims.

innocence. The rule is that the jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Citation omitted; internal quotation marks omitted.) *State* v. *Jones*, 289 Conn. 742, 754–55, 961 A.2d 322 (2008).

"To prove the defendant guilty of assault in the second degree [under § 53a-60 (a) (2)], the state was required to prove beyond a reasonable doubt that (1) the defendant intended to cause physical injury to another person, (2) he did in fact cause injury to such person and (3) he did so by means of a dangerous instrument." (Internal quotation marks omitted.) *State* v. *Bosse*, 99 Conn. App. 675, 678, 915 A.2d 932, cert. denied, 282 Conn. 906, 920 A.2d 310 (2007). "Section 53a-3 (7) requires that the circumstances in which the instrument is used be considered to determine its *potential* as an instrument of death or serious physical injury, but the instrument need not actually cause death or serious physical injury. . . . Serious physical injury is not itself . . . an essential element of the crime charged. It is but a definitional component of an essential element." (Citation omitted; emphasis in original; internal quotation marks omitted.) Id. If, however, an instrument has, in fact, caused a serious physical injury, it is considered dangerous ipso facto. Section 53a-3 (4) defines " '[s]erious physical injury' " as "physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ . . . ." Whether an instrument is "dangerous" and whether a physical injury is "serious" are questions of fact committed to the province of the jury. See, e.g., *State* v. *Almeda*, 211 Conn. 441, 450, 560 A.2d 389 (1989) (serious physical injury); *State* v. *Jones*, 173 Conn. 91, 95, 376 A.2d 1077 (1977) (dangerous instrument).

The Appellate Court's dissenting judge aptly set forth the following additional relevant facts. When the defendant assaulted Rynich with pepper spray, "[t]he first spray blinded [him], causing him to fall to the ground. Once Rynich returned to his feet, the defendant sprayed him in his eyes again, blinding him for a second time. Rynich testified that he had burns on his face, neck and chest, and no matter how much he washed, 'it wasn't going away.' Sergeant Melody Pribesh of the Bridgeport police department saw Rynich in a hospital emergency room and observed that he was 'fiery red, burnt . . . from the waist up in his face, and his eyes were very irritated, red and swollen and tearing.' After treating Rynich in the emergency room, Jeffrey Pellenberg, a physician, diagnosed Rynich with chemical conjunctivitis and chemical dermatitis. Pellenberg testified that 'clearly, [Rynich] was sprayed with some type of substance that was clearly irritative to his eyes and skin.' The burning sensation on Rynich's neck lasted two or three days, and he had blurred vision for the remainder of the day on which he was sprayed."[12] *State v. Ovechka*, supra, 99 Conn. App. 688–89 (*Rogers, J.,* dissenting). Under the highly deferential standard of review applied to jury verdicts, we agree with the conclusion of the Appellate Court dissent that, on the basis of these injuries, "[t]he jury reasonably could have found that the injuries suffered by Rynich, particularly those with respect to his eyes, constituted a serious physical injury. The jury reasonably could have found that a loss of vision in both his eyes, albeit temporarily, constituted a loss or serious impairment of the function of any bodily organ. [Section] 53a-3 (4) does not require that the impairment of an organ be permanent."[13] Id., 689 (*Rogers, J.,* dissenting).

---

[12] Rynich also testified that he has suffered from altered vision since the day that the defendant pepper sprayed him, although, according to Rynich, his physician has not determined definitively whether those vision changes were because of the pepper spray or the effects of age.

[13] The dissent asserts that it has reviewed the photographic exhibits in

Our conclusion, moreover, is supported by decisions from other jurisdictions that have concluded that injuries similar to those suffered by Rynich have the severity necessary to support a finding that pepper spray is a dangerous instrument or dangerous weapon. Indeed, "[m]ost courts have found tear gas, [M]ace or *pepper spray* to be dangerous or deadly weapons capable of inflicting great bodily injury." (Emphasis added.) *People* v. *Blake*, 117 Cal. App. 4th 543, 557, 11 Cal. Rptr. 3d 678, review denied, 2004 Cal. LEXIS 5537 (June 16, 2004). In *Blake*, for example, the California Court of Appeal concluded that a jury reasonably could have found that pepper spray was a "dangerous weapon" that had caused "great bodily injury"[14] because the victims of robberies in which the perpetrator had used pepper spray "suffered substantial, *though transitory*, respiratory distress, burning sensations and blindness. This evidence demonstrates the chemical spray was capable of, and did, inflict serious bodily injury in the present case. In light of the examples in the decisions discussed [herein], it takes little imagination to picture the more serious injuries these victims were fortunate to escape, such as burns, chemical pneumonia, cornea damage or serious asthma attacks." (Emphasis added.) Id., 559.

the present case, and describes them as "show[ing] only a slight redness around Rynich's eyes and moderate redness on his skin, akin to a mild sunburn." We respectfully disagree with the dissent's assessment of the photograph, and see it instead as the depiction of an otherwise strong law enforcement officer, barely able to open his eyes, recovering from the incapacitating effects of having been blinded by pepper spray. These competing perspectives are precisely why, on appeal, we ordinarily defer to the findings of the trier of fact. See, e.g., *State* v. *Morgan*, 274 Conn. 790, 800–801, 877 A.2d 739 (2005).

[14] The relevant statute, California Penal Code § 12022 (b), provided for a one year sentence enhancement for "[a]ny person who personally uses a deadly or dangerous weapon in the commission of a felony or attempted felony . . . ." Case law defined "dangerous weapon" as "an instrument capable of inflicting great bodily injury or death," and noted that "great bodily injury" is "injury which is significant or substantial, not insignificant, trivial or moderate." (Internal quotation marks omitted.) *People* v. *Blake*, supra, 117 Cal. App. 4th 555–56.

We also find especially persuasive the decision of the Court of Appeals of Maryland in *Handy* v. *State*, 357 Md. 685, 689, 745 A.2d 1107 (2000), which concluded that the victim's temporary blindness and burning in his eyes for several hours constituted sufficient evidence of "serious physical harm" to render pepper spray used in a robbery a "dangerous weapon." In *Handy*, the court first noted that, "[f]or an instrument to qualify as a dangerous or deadly weapon under [the applicable statute], the instrument must be (1) designed as anything used or designed to be used in destroying, defeating, or injuring an enemy, or as an instrument of offensive or defensive combat . . . (2) under the circumstances of the case, immediately useable to inflict serious or deadly harm (e.g., unloaded gun or starter's pistol useable as a bludgeon); or (3) actually used in a way likely to inflict that sort of harm (e.g., microphone cord used as a garrote)." (Citation omitted; internal quotation marks omitted.) Id., 693, quoting *Brooks* v. *State*, 314 Md. 585, 600, 552 A.2d 872 (1989). The court then discussed the "actual use" component of that tripartite test in the context of Maryland's statutory definition of "[s]erious physical injury,"[15] which is very similar to that contained in § 53a-3 (4), and concluded that "the use of the pepper spray in the case sub judice did in fact cause the victim to suffer protracted loss or impairment of his vision. [The victim] testified that he was blinded by the pepper spray for several hours and experienced a burning sensation in his eyes . . . ." *Handy* v. *State*, supra, 700. The court, therefore, considered this "testimony . . . legally sufficient evidence

---

[15] The applicable statute defined "[s]erious physical injury" in relevant part as " 'physical injury which . . .

" '(3) Causes serious . . . protracted loss of the function of any bodily member or organ; or

" '(4) Causes serious . . . protracted impairment of the function of any bodily member or organ.' " *Handy* v. *State*, supra, 357 Md. 700, quoting Md. Ann. Code art. 27, § 12 (c) (Cum. Sup. 1998), repealed by Acts 2002, c. 26, § 1, effective October 1, 2002.

that the pepper spray allegedly used by [the defendant] was used as a dangerous weapon . . . ."[16] Id., 701.

We acknowledge that Rynich's injuries were not as grievous as some of the injuries that our courts pre-

---

[16] We note that the Court of Appeals of Maryland's decision in *Handy* is consistent with the decisions from numerous other courts of appeal that have upheld factual findings that pepper spray is a dangerous weapon under their jurisdictions' relevant statutes. See *United States* v. *Neill*, 166 F.3d 943, 949–50 (9th Cir.) (deferring to District Court's finding that pepper spray was "dangerous weapon" capable of causing " 'serious bodily injury,' " defined as one " 'involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation' " because bank robbery victim suffered burning eyes and nose, and aggravation of her preexisting asthma), cert. denied, 526 U.S. 1153, 119 S. Ct. 2037, 143 L. Ed. 2d 1046 (1999); *People* v. *Elliott*, 299 Ill. App. 3d 766, 773, 702 N.E.2d 643 (1998) (rejecting defendant's claim that pepper spray was not "dangerous weapon" as matter of law because of temporary, but "incapacitat[ing]" eye burning, blinding, nausea and respiratory distress experienced by robbery victims); *State* v. *Harris*, 966 So. 2d 773, 778–79 (La. App. 2007) (headaches and temporary blindness caused by pepper spray satisfied " 'extreme physical pain' " element of statutory definition of " 'serious bodily injury' "), writ denied, 978 So. 2d 304 (La. 2008); *People* v. *Norris*, 236 Mich. App. 411, 418–19, 600 N.W.2d 658 (1999) (relying on "extreme eye pain and burning sensations that required [robbery victims] to seek medical treatment" to conclude that jury reasonably could have found that pepper spray was " 'dangerous weapon' ").

Other courts have held similarly with respect to tear gas Mace. See *United States* v. *Dukovich*, 11 F.3d 140, 142 (11th Cir.) (deferring to District Court's finding that tear gas Mace was " 'dangerous weapon' " requiring sentence enhancement for bank robbery when it caused victims to suffer eye pain and burning, headaches and throat pain), cert. denied, 511 U.S. 1111, 114 S. Ct. 2112, 128 L. Ed. 2d 671 (1994); *Commonwealth* v. *Lord*, 55 Mass. App. 265, 270, 770 N.E.2d 520 (Mace is a "dangerous weapon" per se because it is designed to incapacitate by causing "tearing eyes, burning sensations on the skin, and breathing difficulties. Although the degree of debilitation depends on an individual's sensitivity and tolerance for pain, Mace is nonetheless designed to exert very painful and disabling effects."), review denied, 437 Mass. 1108, 774 N.E.2d 1098 (2002); but see *United States* v. *Harris*, 44 F.3d 1206, 1216–19 (3d Cir.) (rejecting District Court's factual finding that Mace used during bank robbery had caused " 'bodily injury' " because record did not reflect "character and duration of the symptoms experienced by the tellers, as well as the character of the 'medical attention' they received"), cert. denied, 514 U.S. 1088, 115 S. Ct. 1806, 131 L. Ed. 2d 731 (1995).

viously have considered to be " '[s]erious physical injur-[ies]' " under § 53a-3 (4), which have included, for example, gunshot wounds, fractures, severe bleeding and loss of consciousness. See, e.g., *State* v. *Miller*, 202 Conn. 463, 488–89, 522 A.2d 249 (1987) (abrasions, contusions, lacerated soft palate and temporary loss of consciousness caused by strangling were " '[s]erious physical injur[ies]' " supporting conviction of assault in first degree); *State* v. *Rumore*, 28 Conn. App. 402, 413–15, 613 A.2d 1328 (temporary loss of consciousness and laceration requiring surgical stapling satisfied "serious physical injury" element of assault in first degree of elderly victim), cert. denied, 224 Conn. 906, 615 A.2d 1049 (1992); *State* v. *Estrada*, 26 Conn. App. 641, 655–56, 603 A.2d 1179 (upholding jury finding that gunshot wound to leg was "serious physical injury"), cert. denied, 221 Conn. 923, 608 A.2d 688 (1992). The cases the defendant cites in support of his argument that Rynich's injuries lacked the requisite severity, including *Miller* and *Rumore*, are, however, far from a model of consistency, which, in our view, demonstrates the fact intensive nature of the serious physical injury inquiry. Compare, e.g., *State* v. *Rossier*, 175 Conn. 204, 206–208, 397 A.2d 110 (1978) (concluding that multiple contusions and right ankle sprain were not sufficient evidence of " 'serious physical injury,' " particularly when evidence presented at trial "consisted primarily of testimony relating to *emotional* trauma precipitated by the [assault]" [emphasis added]), with *State* v. *Barretta*, 82 Conn. App. 684, 690, 846 A.2d 946 (concluding that extensive bruises and abrasions were sufficient evidence of "serious physical injury"), cert. denied, 270 Conn. 905, 853 A.2d 522 (2004).[17] Given "the difficulty of drawing a precise line as to where 'physical injury'

---

[17] We agree, however, with the defendant's argument that *State* v. *Aponte*, 50 Conn. App. 114, 121, 718 A.2d 36 (1998), rev'd in part on other grounds, 249 Conn. 735, 738 A.2d 117 (1999), is distinguishable because the victim's "serious physical injuries" in that child abuse case included, in addition to an eye injury causing temporary vision impairment, a pancreatic injury that a surgeon testified had "created a risk of death."

leaves off and 'serious physical injury' begins"; *State* v. *Almeda*, supra, 211 Conn. 451; we remain mindful that "[w]e do not sit as a thirteenth juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record"; (internal quotation marks omitted) *State* v. *Morgan*, 274 Conn. 790, 800, 877 A.2d 739 (2005); and that we must "construe the evidence in the light most favorable to sustaining the verdict." (Internal quotation marks omitted.) *State* v. *Jones*, supra, 289 Conn. 754.

Thus, on the basis of the previously discussed case law and the well established standard by which we review jury verdicts, we conclude that the temporary blindness, chemical conjunctivitis and chemical burns suffered by Rynich constituted sufficient evidence of " '[s]erious physical injury' " under § 53a-3 (4) such that the jury, if properly instructed,[18] reasonably could have determined that the pepper spray used by the defendant was a " '[d]angerous instrument' " under § 53a-3 (7).[19] Accordingly, the jury's verdict finding the defendant

[18] The dissent challenges the rationale of our conclusion by arguing that it is undisputed that the jury never made a finding that Rynich had suffered serious physical injuries because the trial court never instructed it about the definition of that term. We disagree because the dissent improperly conflates the defendant's sufficiency of the evidence claim, which is before us in this certified appeal, with the defendant's instructional claim and its attendant harmless error analysis; see footnote 9 of this opinion; which is *not* before us. Thus, because we view the evidence in the light most favorable to sustaining the jury's verdict; see, e.g., *State* v. *Jones*, supra, 289 Conn. 754; we leave consideration of the defendant's instructional claims in the first instance to the Appellate Court on remand.

[19] Citing personal interviews with various physicians and medical professionals, as well as a wide variety of medical literature pertaining to the anatomy of the eyes and skin, the defendant argues that medical knowledge and opinion indicate that Rynich's injuries were not serious in nature. Although we understand the defendant's desire to supplement the factual record with this medical fact and opinion evidence, the introduction of which might well have persuaded the jury to decide this factual issue differently, we are constrained to note that well established principles governing appellate review of factual decisions preclude us from utilizing this material to find facts on appeal. See, e.g., *State* v. *Dillard*, 66 Conn. App. 238, 248 n.11, 784 A.2d 387 ("that information was not before the trial court, and, on appeal,

guilty of assault in the second degree in violation of § 53a-60 (a) (2) was supported by sufficient evidence, thereby requiring the Appellate Court to consider the remainder of the defendant's claims on appeal; see footnote 9 of this opinion; rather than reversing the conviction and directing judgment accordingly.[20]

we do not take new evidence"), cert. denied, 258 Conn. 943, 786 A.2d 431 (2001); C. Tait & E. Prescott, Connecticut Appellate Practice and Procedure (3d Ed. 2000) § 8.8 (a), pp. 305–306 ("an appellate court does not retry a case, admit new evidence or weigh the evidence").

[20] The dissent considers our conclusion to be "in effect . . . a per se rule . . . potentially exposing *all* users of [pepper spray] device[s] to a charge of assault in the second degree in violation of § 53a-60 (a) (2)"; (emphasis in original); and expresses further concerns regarding the possibility that our decision might well have the unintended effect of subjecting both ordinary citizens and law enforcement personnel who use pepper spray to expanded civil and criminal liability. We disagree with the dissent's characterization of our conclusion and its effect. First, we do not adopt a per se rule of any kind, as we have not decided that a jury must be instructed that the injuries suffered by Rynich are serious as a matter of law, or that pepper spray is as a matter of law a dangerous instrument. This inquiry remains a question of fact committed to a properly instructed trier. Moreover, to the extent that the dissent claims that, in the wake of this decision, a reviewing court always will have to uphold a verdict finding that injuries akin to those suffered by Rynich are serious physical injuries, we fail to see how this case is different from any other case decided by this court in that courts or litigants seeking to resolve a legal issue logically orient their searches for authority toward decisions that arise from similar sets of facts.

Second, the justification defenses found in our General Statutes, which employ an objective standard of reasonableness, answer the dissent's concerns about the potential expansion of criminal liability for police and correction officers who utilize pepper spray in the course of their duties, as well as citizens who use it as a self-defense instrument. See, e.g., General Statutes § 53a-18 (2) ("[a]n authorized official of a correctional institution or facility may, in order to maintain order and discipline, use such physical force as is reasonable and authorized by the rules and regulations of the Department of Correction"); General Statutes § 53a-19 (a) ("[e]xcept as provided in subsections [b] and [c] of this section, a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose"); General Statutes § 53a-22 (b) ("a peace officer, special policeman appointed under section 29-18b . . . or authorized official of the Department of Correction or the Board of Pardons and Paroles is justified in using physical force upon another person when and to the extent that he or she reasonably believes such to be necessary to: [1] Effect an arrest or prevent the escape from custody of a

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to consider the defendant's remaining claims on appeal.

In this opinion PALMER, ZARELLA and McLACH-LAN, Js., concurred.

SCHALLER, J., with whom KATZ and VERTE-FEUILLE, Js., join, dissenting. Because the jury was not instructed to determine whether the injuries suffered by Michael Rynich constituted a " '[s]erious physical injury' " as defined in General Statutes § 53a-3 (4), and because the injuries suffered, in my view, do not satisfy, as a matter of law, the statutory criteria for serious physical injury, I respectfully dissent. I begin by clarifying our role in this case and why the foundation of the majority's conclusion is based on a faulty premise. Next, I will demonstrate how, under proper consideration of the statutory criteria set forth in § 53a-3 (4), Rynich's injuries do not constitute serious physical injuries as a matter of law. Finally, I will raise some prudential considerations as to why the majority's conclusion may

person whom he or she reasonably believes to have committed an offense, unless he or she knows that the arrest or custody is unauthorized; or [2] defend himself or herself or a third person from the use or imminent use of physical force while effecting or attempting to effect an arrest or while preventing or attempting to prevent an escape"). Moreover, civil claims brought pursuant to 42 U.S.C. § 1983 alleging that the use of pepper spray by police or correction officers constituted excessive force in violation of the fourth or eighth amendments to the United States constitution are judged by a similar objective standard as well; see, e.g., *Wright* v. *Goord*, 554 F.3d 255, 268–69 (2d Cir. 2009) (subjective-objective standard applied to eighth amendment excessive force claims against prison officials); *Davis* v. *Rodriguez*, 364 F.3d 424, 431 (2d Cir. 2004) (objective standard applied to police officers' use of force in effectuating arrest); and such officers also have available to them the defense of qualified immunity. See, e.g., *Pearson* v. *Callahan*, U.S. , 129 S. Ct. 808, 815–16, 172 L. Ed. 2d 565 (2009) (qualified immunity available from damages if government official did not violate "clearly established constitutional or statutory rights of which a reasonable person" would be aware). Thus, we find the dissent's concerns about the ripple effect of our conclusion herein to be unwarranted.

well have adverse consequences that extend beyond the confines of this case.

At the outset, I recognize that when a reviewing court addresses a claim challenging the sufficiency of the evidence, an inherent tension exists between the duty of the court to provide meaningful review of the jury's verdict and the admonition that the court must not attempt to "sit as a thirteenth juror." (Internal quotation marks omitted.) *State* v. *Morgan*, 274 Conn. 790, 800, 877 A.2d 739 (2005). Accordingly, our role is to proceed cautiously, keeping in mind that we must construe the evidence in the light most favorable to sustaining the verdict. *State* v. *Jones*, 289 Conn. 742, 754, 961 A.2d 322 (2008). As a court of last resort, however, we are bound to define and distinguish concepts and, in effect, to *draw lines* to ensure the orderly administration of our laws. The present case calls upon us to draw a line between " '[p]hysical injury' " and " '[s]erious physical injury' " as the legislature has defined those terms in our statutes. General Statutes § 53a-3 (3) and (4). Although it may often be difficult to distinguish between the two concepts in particular factual situations, the distinction must be drawn. *State* v. *Rossier*, 175 Conn. 204, 207, 397 A.2d 110 (1978). I wish to emphasize that this inquiry is not some abstract controversy in semantics. Because the state presented *no evidence* whatsoever on the dangerousness of pepper spray, the only way in which the jury's verdict finding the defendant, Paul Ovechka, guilty of assault in the second degree can be sustained is through a series of reverse inferences that hinge upon an initial finding of a serious physical injury.[1] That is to say, if the jury had found

---

[1] Ordinarily, the state could have proven that the pepper spray or weed killer, if used, was a dangerous instrument by offering expert testimony that such an instrument was "capable of causing death or serious physical injury . . . ." General Statutes § 53a-3 (7). In the present case, the state offered *no evidence* about the capability or characteristics of either substance. On appeal, the state argues that it is within a juror's common knowledge that these substances are capable of causing serious physical injury. I disagree.

that Rynich, in fact, had suffered serious physical injuries, then it reasonably could have inferred that the substance the defendant used was a "'[d]angerous instrument'" as defined by § 53a-3 (7)—i.e., an instrument capable of causing serious physical injuries—which is a necessary predicate to sustain a conviction of assault in the second degree under General Statutes § 53a-60 (a) (2).[2] In contrast, a mere finding of physical injury, in and of itself, would not suffice to support an inference that the substance was a dangerous instrument, in which case, the conviction, as the majority of the Appellate Court determined, cannot stand.

Section 53a-3 (3) defines "'[p]hysical injury'" simply and broadly as "impairment of physical condition or pain . . . ." On the other hand, § 53a-3 (4) defines "'[s]erious physical injury'" as "physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily

Black's Law Dictionary defines "common knowledge" as "[a] fact that is so widely known that a court may accept it as true without proof." Black's Law Dictionary (8th Ed. 2004). Because common knowledge is limited to obvious facts, given the unlikelihood that even a statistically significant minority of our population has been exposed to pepper spray or weed killer, it is too far a stretch to assume that a juror would know whether these substances are capable of causing serious physical injury in the manner used by the defendant, if indeed such capability exists. Moreover, the majority does not rely on this facet of the state's argument as a basis for upholding its conclusion that the evidence in the present case was sufficient.

[2] Stated affirmatively, "[t]o prove the defendant guilty of assault in the second degree pursuant to § 53a-60 (a) (2), the state was required to prove beyond a reasonable doubt that the defendant, with intent to cause a physical injury to Rynich, caused such injury to Rynich by means of a dangerous instrument. General Statutes § 53a-3 (7) defines [d]angerous instrument in relevant part as any instrument . . . which, under the circumstances in which it is used . . . *is capable of causing death or serious physical injury* . . . . [Section] 53a-3 (4) defines [s]erious physical injury as physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or *serious loss or impairment of the function of any bodily organ* . . . ." (Emphasis added; internal quotation marks omitted.) *State* v. *Ovechka*, 99 Conn. App. 679, 683, 915 A.2d 926 (2007).

organ . . . ." It is beyond dispute that these terms encompass different categories of injuries. Moreover, by explicitly defining the concepts, it is clear that the legislature intended, at the least, to minimize the potential inequities that could result if cases such as this were decided by jurors, who were employing different and widely varying constructs of what constitutes a physical injury as opposed to a serious physical injury. We, therefore, must give meaning to, rather than erode, the distinction between these two statutorily defined concepts so that two different juries, presented with the same facts, would not likely, absent the drawing of *some* line, arrive at different verdicts.

In the present case, the majority purports to uphold the jury's verdict based on the notion that the jury reasonably had found that Rynich had suffered a "serious . . . impairment of the function of any bodily organ"; General Statutes § 53a-3 (4); namely, to the eyes and skin, which are both bodily organs.[3] The flaw in the majority's rationale is that, undisputedly, the jury *never* made such a finding because the trial court never instructed the jury on the definition of serious physical injury. Rather, the trial court instructed the jury only on the definition of physical injury, which Rynich clearly suffered, given that term's low threshold and recognition of pain as a criterion. The cornerstone of the majority's rationale, therefore, is unsupportable because the jury never found—nor even had the opportunity to consider—whether Rynich's injuries constituted a "serious . . . impairment of the function of any bodily organ . . . ."[4] General Statutes § 53a-3 (4).

---

[3] Indeed, the dissent in the Appellate Court, which the majority endorses, asserts that "[t]he jury reasonably could have found that a loss of vision in both his eyes, albeit temporarily, constituted a loss of serious impairment of the function of any bodily organ." *State* v. *Ovechka*, 99 Conn. App. 679, 689, 915 A.2d 926 (2007) (*Rogers, J.*, dissenting).

[4] The majority suggests that I have conflated the sufficiency claim, which is before us, with the instructional claim, which is not. See footnote 18 of the majority opinion. I raise the instructional issue to underscore why the

Accordingly, in the absence of a jury finding, I must determine whether the injuries Rynich suffered constituted serious physical injuries as a matter of law. In concluding that the state failed to present sufficient evidence for the jury to find that the defendant, in fact, had suffered serious physical injury, the majority of the Appellate Court stated that, "[a]lthough there was testimony to establish that Rynich suffered eye irritation as well [as a burning sensation on his skin], the facts show that Rynich, after being sprayed, was able to follow the defendant as well as drive himself home at the end of the incident. The evidence proffered by the state established only that Rynich suffered physical injury, i.e., skin and eye irritation, not serious physical injury. Therefore, the jury reasonably could not have concluded that the severity of Rynich's injuries was consistent with the defendant having sprayed Rynich with a dangerous instrument." (Internal quotation marks omitted.) *State* v. *Ovechka*, 99 Conn. App. 679, 685, 915 A.2d 926 (2007). I agree.

In support of its position on appeal, the state principally relies on the testimony of Rynich and his emergency room physician, Jeffrey Pellenberg. Rynich testified that after being sprayed he was blinded and burned and that his eyes were blurry for the rest of the day. Pellenberg testified that he diagnosed Rynich with chemical conjunctivitis and chemical dermatitis, which, according to Pellenberg, means irritation of the eyes and skin.

When construed in a light most favorable to sustaining the verdict, the evidence supported only findings that Rynich suffered irritation to his eyes and skin

majority's deference to the findings of the trier of fact; see footnote 13 of the majority opinion; is misplaced. I do not see how we can give deference to a finding that Rynich's injuries constituted a "serious . . . impairment of the function of any bodily organ" even though such finding undisputedly was never made because the jury was not instructed about that definition.

resulting in a temporary impairment of his sight and some burning sensation on his skin. Although this was, undoubtedly, an unpleasant experience, it hardly rises to the level of seriousness embodied in § 53a-3 (4). With respect to the skin irritation, such a condition, as presented, is not an appropriate matter to be considered in a serious physical injury inquiry. The only evidence presented on this score was that Rynich felt a burning sensation. A burning sensation is not an *injury*, but rather a sensation of *pain* which, as our law clearly dictates, is not a concept embodied in § 53a-3 (4). *State* v. *Milum*, 197 Conn. 602, 619, 500 A.2d 555 (1985) (pain is not concept embodied in statutory definition of serious physical injury).[5] Rather, it is the resulting tissue damage from a burn that constitutes the *injury* that leads to the impairment of the function of the skin, i.e., the bodily organ. In the present case, *no evidence* was presented regarding the extent of damage, if any, to Rynich's skin tissue.[6] A sensation of pain itself, in the absence of expert testimony to the contrary, is not a sufficient basis on which to conclude that the skin's function seriously has been impaired. Accordingly, the only relevant injury presented by this case is with respect to possible injury to Rynich's eyes. It is significant that, after initially being sprayed, Rynich continued

---

[5] Pain can be a proper consideration in a serious bodily injury analysis in certain circumstances. See, e.g., Federal Sentencing Guidelines Manual § 1B1.1, commentary n.1 (L) (2008) (defining " '[s]erious bodily injury' " as "injury involving *extreme physical pain* or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation" [emphasis added]); see also *United States* v. *Harris*, 44 F.3d 1206, 1216 (3d Cir.), cert. denied, 514 U.S. 1088, 115 S. Ct. 1806, 131 L. Ed. 2d 731 (1995).

[6] In its brief, the state asserts that "[s]evere irritation of the skin such as that suffered by Rynich constitutes both a painful injury to the skin and endangerment of the skin's ability to efficiently and effectively serve its bodily functions." As noted, pain is irrelevant to the issue before us, and no evidence was presented at trial regarding the bodily functions the skin performs or, more specifically, whether, and to what extent, Rynich's skin was affected in this regard.

to pursue the defendant on the defendant's own property. After a second spraying, Rynich pursued the defendant all the way to the defendant's front door step. Only after the third spraying and the defendant's ultimate retreat into his home, did Rynich cease his pursuit. Thereafter, Rynich was capable of driving his car to his own house. *State* v. *Ovechka,* supra, 99 Conn. App. 684. I fail to see how a person who supposedly has suffered a serious impairment of his eyes could be capable of such actions. Finally, my position finds support in the photographs admitted into evidence depicting Rynich's condition, which show only a slight redness around Rynich's eyes and moderate redness on his skin, akin to a mild sunburn.

In cases in which our appellate courts have determined that sufficient evidence existed to support a finding of serious physical injury, the injuries suffered were, appropriately, of a *serious* nature. See, e.g., *State* v. *Miller,* 202 Conn. 463, 488, 522 A.2d 249 (1987) (strangulation leading to loss of consciousness, severe facial lacerations, multiple abrasions and contusions, swollen blood filled eyes, weeklong hospital stay); *State* v. *Robinson,* 174 Conn. 604, 606, 392 A.2d 475 (1978) (lacerations, fractured ribs, multiple bruises, broken finger, disfigured legs, blood transfusions); *State* v. *Jeustiniano,* 172 Conn. 275, 281–82, 374 A.2d 209 (1977) (gunshot wounds to groin and forearm); *State* v. *Barretta,* 82 Conn. App. 684, 690, 846 A.2d 946 (severe bruises, abrasions and contusions across trunk of body, shoulder and neckline), cert. denied, 270 Conn. 905, 853 A.2d 522 (2004); *State* v. *Aponte,* 50 Conn. App. 114, 118, 718 A.2d 36 (1998) (potentially life-threatening pancreatic injury, closure of left eye), rev'd in part on other grounds, 249 Conn. 735, 738 A.2d 117 (1999); *State* v. *Graham,* 21 Conn. App. 688, 717, 575 A.2d 1057 (gunshot wound to face and shoulder, loss of sight in left eye), cert. denied, 216 Conn. 805, 577 A.2d 1063 (1990); *State*

v. *Vuley* 15 Conn. App. 586, 589, 545 A.2d 1157 (1988) (momentary loss of sight, hematoma, laceration to scalp requiring seven stitches). Despite this cohesive body of law, the majority finds inconsistency and confusion in the fact that in *State* v. *Rossier*, supra, 175 Conn. 206–208, we concluded that evidence of multiple contusions and a right ankle sprain did not constitute sufficient evidence to support a finding of serious physical injury, whereas in *State* v. *Barretta*, supra, 684, the Appellate Court concluded that extensive bruises and abrasions were sufficient to constitute serious physical injuries. I cannot agree with the majority's apparent interpretation that all bruises constitute the same degree of injury. More importantly, the majority omits from its discussion of *Barretta* the fact that the victim was beaten repeatedly with a baseball bat and kicked to the point where his entire torso was covered with blue and purple bruises and abrasions and that the victim could not walk without assistance. Id., 686, 690. Under the "disfigurement" prong of § 53a-3 (4), which is not at issue in the present case, the Appellate Court determined that these were serious physical injuries. Such injuries are a far cry from the injuries suffered by the victim in *Rossier*, who only required an ace bandage for his ankle. *State* v. *Rossier*, supra, 206.[7] In light of our precedent and the nature of the injuries suffered by Rynich, I conclude that the Appellate Court majority properly

[7] It should also be noted that, although they may be persuasive, we are not bound by decisions of the Appellate Court. Therefore, I disagree with the majority's attempt to demonstrate inconsistencies in our case law on the basis of decisions from two different courts.

In addition, I find the majority's reference to outside jurisdictions unpersuasive. Many of those cases address different substances, i.e., tear gas or Mace; see, e.g., *United States* v. *Dukovich*, 11 F.3d 140, 142 (11th Cir.) (addressing tear gas Mace), cert. denied, 511 U.S. 1111, 114 S. Ct. 2112, 128 L. Ed. 2d 671 (1994); and/or are based on different statutory criteria. See, e.g., *Commonwealth* v. *Lord*, 55 Mass. App. 265, 268–69, 770 N.E.2d 520 (statutes do not define "dangerous weapon"), review denied, 437 Mass. 1108, 774 N.E.2d 1098 (2002).

determined that there was insufficient evidence to support the defendant's conviction of assault in the second degree in violation of § 53a-60 (a) (2).

Turning to the consequences of the majority's decision, despite the faulty premise that underlies its conclusion, the majority proceeds to set forth what, in effect, must be considered a per se rule, thereby potentially exposing *all* users of this device to a charge of assault in the second degree in violation of § 53a-60 (a) (2). This is so because, at a minimum, virtually every such "victim" of pepper spray is likely to suffer temporary visual blurriness along with eye and skin irritation. It is common knowledge that the ordinary function of pepper spray is as a nonlethal form of self-protection for ordinary citizens and as a nonlethal means by which police officers subdue an uncooperative suspect. To be sure, the use of pepper spray must not be taken lightly. With that in mind, however, I am troubled by the potential *unintended consequences* of the majority's ruling on actions undertaken by ordinary citizens.[8] Moreover, I am equally concerned about the potentially chilling effect this ruling could have on the use of pepper spray by police officers and correction officers. Will these officers be more hesitant to use pepper spray knowing that the suspect or prisoner could rely on this case to support a civil action seeking damages for serious

[8] Take for example a woman walking down a dark street at night, followed by an unknown man. If the woman intentionally sprays the man because she, albeit mistakenly and in good faith, believes an attack is imminent, her criminal exposure, as a result of the majority's opinion, based as it is on a faulty premise, has increased from assault in the third degree in violation of General Statutes § 53a-61 (a) (1), which is a class A *misdemeanor* with no minimum sentence, to assault in the second degree in violation of § 53a-60 (a) (2), which is a class D *felony* that carries a minimum sentence of one year imprisonment and a maximum sentence of five years imprisonment. General Statutes § 53a-35a (8). Although I agree with the majority that our statutes provide justification defenses, the availability of these defenses does not bear on the point made, that is, that certain people may be faced with heightened *criminal exposure* as a result of the majority opinion.

physical injuries and the concomitant increase in civil liability for the officer and his governmental agency?

Moreover, because the majority's ruling necessarily flows from the nature of the *injury* and not the *instrument,* its opinion could well be interpreted to go beyond pepper spray cases to apply more broadly to any case involving an action that produces visual blurriness and skin and eye irritation. At this point, it is important to note that § 53a-60 (a) (2) requires an analysis of the *circumstances* in which the instrument is used. That is, if someone causes another person to suffer from blurriness while that person is driving an automobile, I would agree, as the defendant concedes, that under such circumstances, the instrument would be capable of causing serious physical injuries, i.e., injuries flowing from an automobile accident. That said, the majority's decision in this case—which clearly did not arise out of such circumstances—could lead to unintended adverse consequences under § 53a-60 (a) (2) on the ground that visual blurriness and eye and skin irritation are serious physical injuries. For the foregoing reasons, including the insufficient evidence in this case and the adverse consequences of the ruling, I respectfully dissent.

Accordingly, I would affirm the judgment of the Appellate Court.