STATE OF CONNECTICUT *v.* PAUL OVECHKA
(AC 26077)

Bishop, DiPentima and Hennessy, Js.

Argued November 10, 2009—officially released January 5, 2010

*Ruth Daniella Weissman,* special public defender, for the appellant (defendant).

*Margaret Gaffney Radionovas,* senior assistant state's attorney, with whom, on the brief, were *John C. Smriga,* state's attorney, *Jonathan C. Benedict,* former

state's attorney, and *Nicholas J. Bove, Jr.*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. This case is before us on remand from our Supreme Court. The defendant, Paul Ovechka, appeals from the judgment of conviction, rendered after a jury trial, of assault in the second degree in violation of General Statutes § 53a-60 (a) (2). In *State* v. *Ovechka*, 292 Conn. 533, 549, 975 A.2d 1 (2009), the Supreme Court reversed this court's decision in *State* v. *Ovechka*, 99 Conn. App. 679, 915 A.2d 926 (2007), and remanded the case with direction to consider the remaining claims of the defendant on appeal. The defendant claims that (1) the trial court improperly instructed the jury, (2) the evidence was insufficient to show that the state had disproved all available justification defenses beyond a reasonable doubt, (3) the court improperly excluded certain evidence from the jury room and (4) he was deprived of a fair trial due to prosecutorial impropriety. We affirm the judgment of the trial court.

This court's earlier opinion in this matter sets forth the following facts and procedural history. "The defendant and Michael Rynich, a Bridgeport police officer, were next door neighbors. Three separate incidents occurred between the neighbors resulting in charges being brought against the defendant. These incidents occurred on December 26, 2002, and June 10 and July 2, 2003. The July 2, 2003 incident, in which the defendant sprayed Rynich in the eyes with either pepper spray or weed killer after Rynich had entered the defendant's yard, is the incident we are concerned with in this appeal." Id., 681.

With respect to the July 2, 2003 incident, "[t]he defendant conceded that he was on his lawn spraying weed killer on weeds, within the fence line of his property, when he saw Rynich leave his house and get into his

vehicle. The jury also heard testimony from Rynich. Rynich testified that when he stopped his vehicle at the stop sign near the defendant's property, he saw the defendant's wife. Because Rynich wanted to talk with the defendant's wife about the issues that had occurred between the defendant and himself, Rynich drove his car to the side of the road in front of the defendant's house and got out of his vehicle. Rynich walked onto the defendant's property. The defendant and Rynich exchanged insults. Rynich yelled to the defendant's wife about the defendant being crazy. The defendant sprayed Rynich in the eyes and face. The defendant retreated onto his porch and eventually into his house. Rynich continued to follow the defendant up to the defendant's front door, even after being sprayed in the face and eyes. The defendant sprayed Rynich for the last time when the defendant was inside his house. The defendant claims [that] he sprayed pepper spray, which he had in his pocket. The state claims [that] the defendant may have sprayed weed killer, which he had in his hands. The defendant testified that he intended to spray Rynich and that he did in fact spray Rynich. Rynich testified to severe pain and burning in the chest, neck, face and eyes, along with temporary blindness." Id., 683–84.

"On July 23, 2003, the defendant was charged in an information with assault in the third degree in violation of General Statutes § 53a-61 (a) (1) and breach of the peace in the second degree in violation of General Statutes § 53a-181 (a) (1), both in connection with [the] incident on December 26, 2002; public indecency in violation of General Statutes § 53a-186 (a) (2) in connection with an incident on June 10, 2003; and assault in the second degree in violation of § 53a-60 (a) (2) in connection with an incident on July 2, 2003. On September 10, 2003, following a jury trial, the defendant was found not guilty of assault in the third degree, breach

of the peace in the second degree and public indecency, and guilty of assault in the second degree. On February 18, 2004, the court denied the defendant's written motion for both a judgment of acquittal and a new trial and sentenced the defendant to a term of five years imprisonment, execution suspended after twenty-eight months, with five years of probation. On December 10, 2004, the defendant appealed from the judgment of conviction." Id., 681–82.

I

The defendant asserts three claims of instructional error. The defendant claims that (1) the court's instructions on assault in the second degree in violation of § 53a-60 (a) (2)[1] were inadequate, (2) he was deprived of his constitutional right to present a defense because no instructions were given on defense of property, defense of premises or defense of dwelling and (3) the court's instructions on self-defense failed to ensure that the state was required to disprove the defense beyond a reasonable doubt.

Because the defendant did not raise these claims of instructional error before the trial court, they are unpreserved, and, consequently, he requests review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[2] *Golding* holds that "a defendant can prevail on

---

[1] General Statutes § 53a-60 (a) provides in relevant part: "A person is guilty of assault in the second degree when . . . (2) with intent to cause physical injury to another person, he causes such injury to such person . . . by means of a deadly weapon or a dangerous instrument other than by means of the discharge of a firearm . . . ."

[2] In the alternative, the defendant seeks review under the plain error doctrine. See Practice Book § 60-5. The plain error doctrine "is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . [I]nvo-

a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id., 239–40. With these principles in mind, we address each of the defendant's instructional claims in turn.

A

The defendant first claims that the court improperly failed to instruct the jury on the definition of "serious physical injury" for assault in the second degree. The court instructed the jury on the "dangerous instrument" element of assault in the second degree substantially in accordance with the definition set forth in General Statutes § 53a-3 (7), as follows: "A dangerous instrument is any instrument, article, substance—or substance which, under the circumstances in which it is used or attempted or threatened to be used, is capable of causing death or serious physical injury. It includes in addition to the more obvious articles, motor vehicles, aircraft, mechanically propelled vessels within the concept of a dangerous instrument; the focus is on the deadly capability of the instrument under the conditions of a particular case. Thus, it is necessarily under this

cation of the plain error doctrine is reserved for occasions requiring the reversal of the judgment under review." (Internal quotation marks omitted.) *State* v. *Cutler*, 293 Conn. 303, 326, 977 A.2d 209 (2009). The defendant has not demonstrated that the claimed errors are so clear and so harmful that manifest injustice will result if the judgment is not reversed. Nor has he shown that his claims affect the fairness and integrity of and public confidence in judicial proceedings. We, therefore, conclude that this is not an occasion requiring the reversal of the trial court's judgment under the plain error doctrine.

definition that under the circumstances in which the instrument was used or attempted or threatened to be used, it was capable of causing death or serious physical injury." The court did not define "serious physical injury" as used in the definition of "dangerous instrument" but did define "physical injury" as "impairment of physical condition or pain." The defendant neither requested a definition of "serious physical injury" in his request to charge nor excepted to the adequacy of the court's charge.

This court has held that "[s]erious physical injury is not itself . . . an essential element of the crime charged. It is but a definitional component of an essential element. A court's failure to read the statutory definition of a phrase which itself appears as part of the definition of an essential element is not an error of constitutional proportion." (Internal quotation marks omitted.) *State* v. *Johnston*, 17 Conn. App. 226, 228, 551 A.2d 1264 (1988), cert. denied, 210 Conn. 810, 556 A.2d 609 (1989); *State* v. *Huff*, 10 Conn. App. 330, 335, 523 A.2d 906, cert. denied, 203 Conn. 809, 525 A.2d 523 (1987). Accordingly, we conclude that the defendant's claim fails to meet the second prong of *Golding*.

B

The defendant next claims that the court improperly failed to instruct the jury, sua sponte, on defense of property, premises or dwelling under General Statutes §§ 53a-20 and 53a-21. We disagree.

At trial, the defendant asserted the claim of self-defense. The defendant requested that the court instruct the jury as to self-defense, and the court gave such an instruction. The defendant did not, however, request a charge related to the defense of property, premises or dwelling, and the court did not give such a charge on those issues.

Although the right to establish a defense is a " 'fundamental element of due process of law' "; *State* v. *Ebron*, 292 Conn. 656, 685, 975 A.2d 17 (2009); our Supreme Court has concluded that "trial courts do not have a duty to charge the jury, sua sponte, on defenses, affirmative or nonaffirmative in nature, that are not requested by the defendant." Id., 691–92. Accordingly, the defendant's claim fails.

C

The defendant also claims that the court's instructions on self-defense failed to ensure that the state was required to disprove the defense beyond a reasonable doubt.[3] Specifically, the defendant contends that the

[3] In regard to self-defense, the court instructed the jury as follows: "Self-defense is a legal defense to which the use of force would otherwise be criminal. This does not mean, however, the defendant must prove the defense of self-defense. The burden of guilty beyond a reasonable doubt remains on the state, which means that the state must prove—must disprove beyond a reasonable doubt the defense of self-defense.

"Now, a person is justified in using reasonable physical force upon another person to defend himself from what he reasonably believes to be the imminent use of physical force, and he may use such a degree of force in which he reasonably believes is necessary for that purpose. However, a person is not justified in using physical force in self-defense when, with intent to cause physical injury to another person, he provokes the use of physical force by that person. Nor is the person justified in using physical force in self-defense when he is the initial aggressor.

"First of all, the defendant must actually believe that he is faced with imminent use of physical force upon him. He must in fact have such a belief. Second, that belief must be reasonable. A reasonable belief is one that a reasonably prudent person viewing the situation from the defendant's perspective and in the same circumstances that the defendant was in would have. It is not an irrational belief, nor is it a belief that is not justified by . . . all the circumstances that exist then and there. Nor is it necessarily the belief the defendant in fact had. It is a belief that was reasonable from the perspective of a reasonable person in the defendant's circumstances.

"Third, acting with that reasonable belief, the amount and degree of force that he uses must be reasonable. It must be that the degree of force that a reasonable person in the same circumstances viewed from the perspective of the defendant would use and no more. If the degree of force used is excessive or unreasonable in view of all the circumstances, the defendant is not entitled to the defense of self-defense.

"Finally, a person who is not justified in using physical force, if intending to cause physical injury to another person, he provokes the use of physical

court improperly failed to define "provocation" or "initial aggressor." The defendant concedes, however, that he did not request such instructions, that the court, in essence, gave the self-defense charge he requested and that the charge, as given, mirrors the self-defense charge set forth in D. Borden & L. Orland, 5A Connecticut Practice Series: Criminal Jury Instructions (3d Ed. 2001) § 6.1.

Our Supreme Court has recently held that where there is an "indication that the defendant actively induced the trial court to give the [improper] instruction that he now challenges on appeal"; *State* v. *Ebron*, supra, 292 Conn. 682; the defendant's claim is waived and, thus, not reviewable under *Golding*. Because the defendant filed a request to charge, and the court acceded to the defendant's request, the defendant cannot now complain that he was deprived of a fair trial on the ground that the court should have instructed the jury otherwise.

II

The defendant next claims that the evidence was insufficient to show that the state had disproved self-defense beyond a reasonable doubt.[4] We are unpersuaded.

"In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences

force by that other person. Whether the defendant had the requisite belief or the defendant's belief was reasonable, whether the degree of force he used was unreasonable and whether he provoked the use of physical force are questions for you to determine from the evidence."

[4] The defendant also claims that the state failed to prove that the defendant was not acting in defense of premises, property or dwelling. Because the defendant did not raise this defense at trial, however, there was no burden on the state to disprove it.

reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . [I]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. The rule is that the jury's function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Citation omitted; internal quotation marks omitted.) *State* v. *Jones*, 289 Conn. 742, 754–55, 961 A.2d 322 (2008).

General Statutes § 53a-19 (a) provides: "Except as provided in subsections (b) and (c) of this section, a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm."

Here, the jury could have found that the defendant repeatedly sprayed Rynich with either weed killer or pepper spray in the absence of any physical force on the part of Rynich, and, the jury reasonably could have found that Rynich did not pose a threat to the defendant. In fact, the jury heard evidence that the defendant sprayed Rynich once from inside his own home. On the basis of the foregoing, the jury reasonably could have found that the defendant was not acting in self-defense when he sprayed Rynich.

## III

The defendant next claims that the court improperly excluded certain evidence from the jury room. Specifically, the defendant claims that the court improperly excluded from the jury room the atomizer that the defendant had been using to spray his plants, the Spectracide, a can of pepper spray and the shirt that Rynich had been wearing when he was sprayed. At trial, both the state and defense counsel agreed with the court's decision not to send these items into the jury room for deliberations because they were potentially caustic. Because this claim relates to the court's exercise of discretion regarding evidentiary matters and is not constitutional in nature, it fails under the second prong of *Golding*. See *State* v. *Blango*, 103 Conn. App. 100, 117, 927 A.2d 964, cert. denied, 284 Conn. 919, 933 A.2d 721 (2007). Consequently, we decline to review this claim.

## IV

The defendant finally claims that he was deprived of a fair trial due to prosecutorial impropriety. The defendant claims that during closing argument, the prosecutor improperly (1) asked the jurors to put themselves in the place of Rynich, (2) vouched for the veracity of Rynich and (3) "manufactured a scenario to bolster [Rynich's] allegation that the weed killer dispenser might have been used when [the defendant] had given a reasonable explanation for the weed killer dispenser's location." We are unpersuaded.

Although the defendant did not object at trial to any of the state's comments that he now claims were improper, "a claim of prosecutorial impropriety, even in the absence of an objection, has constitutional implications and requires a due process analysis under *State* v. *Williams*, 204 Conn. 523, 535–40, 529 A.2d 653 (1987). . . . In analyzing claims of prosecutorial impropriety, we engage in a two step process. . . . First, we must

determine whether any impropriety in fact occurred; second, we must examine whether that impropriety, or the cumulative effect of multiple improprieties, deprived the defendant of his due process right to a fair trial. . . . To determine whether the defendant was deprived of his due process right to a fair trial, we must determine whether the sum total of [the prosecutor's] improprieties rendered the defendant's [trial] fundamentally unfair, in violation of his right to due process. . . . The question of whether the defendant has been prejudiced by prosecutorial [impropriety], therefore, depends on whether there is a reasonable likelihood that the jury's verdict would have been different absent the sum total of the improprieties." (Internal quotation marks omitted.) *State* v. *Moore*, 293 Conn. 781, 809, 981 A.2d 1030 (2009).

"Because the claimed prosecutorial [improprieties] occurred during closing arguments, we advance the following legal principles. [P]rosecutorial [impropriety] of a constitutional magnitude can occur in the course of closing arguments. . . . In determining whether such [an impropriety] has occurred, the reviewing court must give due deference to the fact that [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom." (Internal quotation marks omitted.) *State* v. *Skidd*, 104 Conn. App. 46, 64–65, 932 A.2d 416 (2007). With these principles in mind, we now turn to the defendant's claims.

A

The defendant claims that one of the prosecutor's remarks violated the prohibition against improper

"golden rule" arguments. "[A] golden rule argument is one that urges jurors to put themselves in a particular party's place . . . or into a particular party's shoes. . . . Such arguments are improper because they encourage the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence. . . . They have also been equated to a request for sympathy." (Internal quotation marks omitted.) *State* v. *Long*, 293 Conn. 31, 53–54, 975 A.2d 660 (2009). "The danger of these types of arguments lies in their [tendency] to pressure the jury to decide the issue of guilt or innocence on considerations apart from the evidence of the defendant's culpability." (Internal quotation marks omitted.) Id., 54. "[A] prosecutor may not appeal to the emotions, passions and prejudices of the jurors. . . . [S]uch appeals should be avoided because they have the effect of diverting the [jurors'] attention from their duty to decide the case on the evidence. . . . When the prosecutor appeals to emotions, he invites the jury to decide the case, not according to a rational appraisal of the evidence, but on the basis of powerful and irrelevant factors which are likely to skew that appraisal." (Internal quotation marks omitted.) Id.

Here, during closing argument, when the prosecutor was discussing Rynich's medical records, he said to the jury: "Now, put yourself in a situation of someone who has just been sprayed with chemicals."[5] The prosecutor

[5] The prosecutor stated: "Now, put yourself in a situation of someone who has just been sprayed with chemicals. I'm not exactly sure what it was, it could have been both. You can't even see, your eyes are burning, your face is burning. You get home and an ambulance is called. You are taken to St. Vincent's Hospital [in Bridgeport], you see a doctor. They write things down in the records. Initial blood pressure, 192 over 121. They circled that. . . . The records say, sprayed by pesticide and pepper spray during altercation, skin to arms and neck. When something like this happens to an individual and you are sprayed, you are worried about your eyesight, you want to be accurate because your eyes, your future job, your life is on the line if you are blind. Okay. You are in the hospital. If you knew you were sprayed by just pepper spray, you'd say it. You wouldn't say, I think it was insecticide

then went on to describe what happened to Rynich, arguing that when you are hurt, and in need of medical assistance, you are likely to tell the truth to the medical professionals who are treating you. In making this comment, it is apparent that the prosecutor was not trying to appeal to the emotions of the jurors but, rather, was asking them to draw inferences from the evidence that had been presented regarding Rynich's actions and how a reasonable person would act under the specified circumstances. Because the prosecutor was not asking the jurors to put themselves in Rynich's place in order to garner sympathy or arouse the jurors' emotions, we conclude that the prosecutor's statements did not violate the prohibition against improper golden rule arguments.

B

The defendant also claims that the prosecutor improperly vouched for the veracity of Rynich and improperly used a religious reference. We disagree.

During closing argument, in discussing Rynich's testimony and his motive to tell the truth, the prosecutor argued: "[Y]ou are worried about your vision, are you going to tell them the truth or are you going to lie? And your lives are on the line. . . . He told it like it was . . . ." He also stated: "The two people in the world you don't lie to [are] your priest or your doctor . . . . When you need help, when you are really down and out, you tell the truth. Officer Rynich told the truth."

The Supreme Court has stated that "[a] prosecutor may properly comment on the credibility of a witness where . . . the comment reflects reasonable inferences from the evidence adduced at trial." (Internal quotation marks omitted.) *State* v. *Luster,* 279 Conn.

and pepper spray because your vision is on the line. You're hurt. The comments that Officer Rynich made under stress at the hospital are very consistent with how he testified."

414, 438, 902 A.2d 636 (2006). It is also well settled that a prosecutor may argue that a witness has no motive to lie. *State* v. *Long*, supra, 293 Conn. 45.

Here, the prosecutor was emphasizing the importance of the truth in seeking medical treatment and that Rynich was not likely thinking about the police investigation at the time he was talking to medical personnel but was, instead, focused on his injuries. The prosecutor was asking the jurors to draw from his argument the inference that Rynich had no motive to lie.

Additionally, the prosecutor's general and singular reference to a priest was not the type of inflammatory religious reference that has been deemed improper by our courts. See, e.g., *State* v. *Camacho*, 282 Conn. 328, 381, 924 A.2d 99 (references to Cain and Abel and choice between good and evil), cert. denied, 552 U.S. 956, 128 S. Ct. 388, 169 L. Ed. 2d 273 (2007); cf. *State* v. *Ceballos*, 266 Conn. 364, 382–93, 832 A.2d 14 (2003) (comment regarding divine punishment). Accordingly, we cannot conclude that the prosecutor's comments in this regard were improper.

C

The defendant finally claims that the prosecutor improperly "manufactured a scenario to bolster [Rynich's] allegation that the weed killer dispenser might have been used when [the defendant] had given a reasonable explanation of the weed killer dispenser's location." Here, the prosecutor's argument was in response to the defendant's testimony that he had dropped the weed killer dispenser earlier in his encounter with Rynich and then sprayed Rynich with pepper spray but then later, after Rynich had left, picked the weed killer dispenser up from where he had dropped it and brought it to the front stoop. The prosecutor argued to the jury that the defendant sprayed Rynich with weed killer on the basis of the dispenser's having later been found

near the door where the defendant had sprayed Rynich after retreating to his house. The defendant argues that the prosecutor's argument may have led the jury to believe that the prosecutor had some independent knowledge regarding how the weed killer dispenser ended up on the stoop because if the defendant had been spraying Rynich until Rynich retreated, the dispenser would have been dropped inside, not outside, the breezeway.

"[I]t is not improper for the prosecutor to comment [on] the evidence presented at trial and to argue the inferences that jurors might draw therefrom . . . . We must give the jury the credit of being able to differentiate between argument on the evidence and attempts to persuade [it] to draw inferences in the state's favor, on the one hand, and improper unsworn testimony, with the suggestion of secret knowledge, on the other hand." (Internal quotation marks omitted.) *State* v. *Fauci*, 282 Conn. 23, 36, 917 A.2d 978 (2007). Because the prosecutor was asking the jury to draw an inference that was based on the evidence adduced at trial, and the prosecutor did not suggest that he had independent knowledge of how the dispenser ended up on the stoop, the prosecutor's comment was not improper.[6]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] To the extent that the defendant makes other vague and cursory claims of prosecutorial impropriety, because he does not explain the factual basis, nor does he provide any legal support, for such claimed improprieties, we decline to address them. See *Unistar Properties, LLC* v. *Conservation & Inland Wetlands Commission*, 293 Conn. 93, 124 n.20, 977 A.2d 127 (2009) (" '[w]e are not required to review issues that have been improperly presented to this court through an inadequate brief' ").