STATE OF CONNECTICUT *v.* MILTON CAMPBELL
(AC 33142)

DiPentima, C. J., and Espinosa and Sheldon, Js.

56

Argued October 11, 2012—officially released February 26, 2013

*Charles F. Willson*, special public defender, for the appellant (defendant).

*Linda Currie-Zeffiro*, assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Pamela J. Esposito*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, C. J. The defendant, Milton Campbell, appeals from his conviction of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1), and of being a persistent serious felony offender in violation of General Statutes § 53a-40 (c) and (j). On appeal, the defendant claims that he was deprived of a fair trial due to improper statements made by the prosecutor during closing arguments. We disagree that the prosecutor's statements deprived the defendant of a fair trial, and therefore affirm the judgment of conviction.

The jury reasonably could have found the following facts. The victim met the defendant in a substance abuse program in 2009. The victim[1] checked into the program for her use of cocaine. In November, 2009, the victim and the defendant agreed to get high together. The victim picked the defendant up from his home in Bridgeport on November 6, 2009. After purchasing alcohol from a local store and obtaining cocaine, the victim went back with the defendant to his home, where they consumed the alcohol and she used her cocaine. Once she had consumed the drugs, the victim intended to leave the defendant's house, but the defendant blocked

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

her way and made sexual advances toward her. The defendant turned off the light, and the victim felt something sharp against her throat, which she thought was a knife. The defendant then instructed the victim to take off her clothes. Fearing for her safety, the victim complied, but asked the defendant to use a condom. The defendant put on a condom and proceeded to have intercourse with the victim both vaginally and anally. At a certain point, the defendant stopped, and the victim asked to go to the bathroom, but the defendant would not permit her to do so. The victim testified that the defendant seemed to go into a kind of "zone" of semi-consciousness, and, in that time, she called his father, who lived upstairs, and 911. The Bridgeport police responded to the victim's call, but when they knocked on the door, the defendant held his hands around the victim's throat to keep her quiet. The police left the defendant's residence, and the victim asked to use the bathroom again. The defendant allowed her to go, and when she was finished, he went into the bathroom. While he was in the bathroom, the victim ran out of the house to her car, which was parked on the street outside, wearing only a T-shirt and socks. After driving for a short period, the victim pulled over and called 911 again.

The police arrived at the victim's vehicle, provided her with a blanket and sent her to a hospital. At the hospital, the victim underwent a physical examination through the use of a rape kit[2] and was given antipregnancy and antiHIV medication, in addition to a shot for sexually transmitted diseases. The police questioned

---

[2] In the proceedings below, the rape kit was referred to as a SANE kit. The acronym SANE stands for sexual assault nurse examiner. A SANE kit includes, generally, small boxes, microscope slides and plastic bags for collecting and storing evidence such as clothing fibers, hairs, saliva, semen or body fluid, which may help identify the assailant and provide evidence supporting prosecution in a criminal trial.

the victim at the hospital, and she gave them a description of the defendant, as well as the details of the incident.

The next day, November 7, 2009, the defendant was arrested at his home. In an amended information, the defendant was charged with sexual assault in the first degree in violation of § 53a-70 (a) (1), kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A), and being a persistent serious felony offender pursuant to § 53a-40 (c) and (j). The defendant pleaded not guilty to the sexual assault and kidnapping charges.

The trial began on October 22, 2010. The state presented evidence that included the results of the victim's rape kit examination, photographs of the defendant's house, audio recordings of 911 calls made by the victim, a crack pipe, clothing recovered from the victim and from the defendant's home on the night of the incident, the victim's medical records, a forensic biology section report and a DNA section report. The state presented as a witness the nurse who examined the victim and, as expert witnesses, two forensic analysts from the state forensic science laboratory.

On October 29, 2010, the jury returned a verdict of guilty on the charge of sexual assault in the first degree, but failed to reach a verdict on the charge of kidnapping. The court declared a mistrial on the kidnapping count. Following the verdict, the court accepted the defendant's plea of nolo contendere to the amended part B information. On January 10, 2011, the court sentenced the defendant to a term of twenty-five years imprisonment for sexual assault in the first degree, as enhanced by the charge of being a persistent serious felony offender. The state entered a nolle prosequi as to the count of kidnapping in the first degree. This appeal followed.

The sole issue on appeal is whether the defendant was denied his right to a fair trial as a result of prosecutorial impropriety. Our standard of review concerning claims of prosecutorial impropriety is well settled. "[T]o deprive a defendant of his constitutional right to a fair trial . . . the prosecutor's conduct must have so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial [impropriety]." (Internal quotation marks omitted.) *State* v. *Johnson*, 71 Conn. App. 272, 285, 801 A.2d 890, cert. denied, 261 Conn. 939, 808 A.2d 1133 (2002), cert. denied, 537 U.S. 1207, 123 S. Ct. 1286, 154 L. Ed. 2d 1052 (2003). In analyzing claims of prosecutorial impropriety, we engage in a two step process; each step is separate and distinct. See *State* v. *Long*, 293 Conn. 31, 36, 975 A.2d 660 (2009). "First, we must determine whether any impropriety in fact occurred; second, we must examine whether that impropriety, or the cumulative effect of multiple improprieties, deprived the defendant of his due process right to a fair trial." (Internal quotation marks omitted.) *State* v. *Moore*, 293 Conn. 781, 808, 981 A.2d 1030 (2009), cert. denied, 560 U.S. 954, 130 S. Ct. 3386, 177 L. Ed. 2d 306 (2010).[3]

---

[3] Although the defense counsel did not object to the prosecutor's statements at the time of her summation and rebuttal, we may still review these claims. "[I]n cases involving incidents of prosecutorial [impropriety] that were not objected to at trial . . . it is unnecessary for the defendant to seek to prevail under the specific requirements of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and, similarly, it is unnecessary for a reviewing court to apply the four-pronged *Golding* test." *State* v. *Stevenson*, 269 Conn. 563, 572–73, 849 A.2d 626 (2004). "The object of the inquiry before a reviewing court in claims involving prosecutorial [impropriety], therefore, is always and only the fairness of the entire trial, and not the specific incidents of [impropriety] themselves. Application of the . . . factors [in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987)] provides for

## I

We first turn to the question of whether prosecutorial impropriety occurred. "[A]n impropriety is an impropriety, regardless of its ultimate effect on the fairness of the trial." *State* v. *Long*, supra, 293 Conn. 36. "[P]rosecutorial [impropriety] of a constitutional magnitude can occur in the course of closing arguments. . . . In determining whether such [an impropriety] has occurred, the reviewing court must give due deference to the fact that [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, as the state's advocate, a prosecutor may argue the state's case forcefully . . . ." (Internal quotation marks omitted.) *State* v. *Ovechka*, 118 Conn. App. 733, 744, 984 A.2d 796, cert. denied, 295 Conn. 905, 989 A.2d 120 (2010).

The defendant contends that during her closing argument and rebuttal, the prosecutor made improper statements. Specifically, the defendant challenges (1) the prosecutor's use of "you" throughout her arguments as "golden rule" arguments, (2) the prosecutor's discussion of the habits of drug addicts as inappropriate testimony from a nonexpert and (3) the prosecutor's discussion of the victim's reasons for agreeing to the rape kit examination as inappropriate bolstering of the victim's credibility. We agree that there was prosecutorial impropriety as to the prosecutor's use of "you" when discussing the victim's mental state after the incident. We also agree that the prosecutor improperly opined as to the drug habits of addicts, although we

such an analysis, and the specific *Golding* test, therefore, is superfluous." (Internal quotation marks omitted.) *State* v. *Fauci*, 282 Conn. 23, 34, 917 A.2d 978 (2007).

do not agree that her use of "you" in that same statement rose to the level of impropriety. Further, we disagree that there was impropriety in the prosecutor's other uses of "you" and in her discussion of the victim's reasons for agreeing to a rape kit examination.

### A

There are limits to the zeal with which a prosecutor may present her case. One such limitation is the use of a "golden rule" argument. "[A] golden rule argument is one that urges jurors to put themselves in a particular party's place . . . or into a particular party's shoes. . . . Such arguments are improper because they encourage the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence. . . . They have also been equated to a request for sympathy." (Internal quotation marks omitted.) *State* v. *Long*, supra, 293 Conn. 53–54. The defendant argues that the prosecutor's use of the word "you" more than thirty times throughout her summation and rebuttal was inappropriate. We disagree that every use was inappropriate, but we agree that in one instance the prosecutor's statements rose to the level of impropriety.

### 1

We look first to the prosecutor's use of "you" when discussing the victim's mental state after the incident. The state argues that the prosecutor's use of "you" was merely colloquial, and meant to encourage the jurors to use common sense to make reasonable inferences, not to put themselves in the victim's shoes. We disagree.

In her rebuttal, the prosecutor stated, in relevant part: "And part of [the victim's] addiction is that she made bad choices. And guess what? Being raped didn't cure her of that addiction. It didn't cure her of making cloudy decisions; isn't that amazing. Rape doesn't cure you. If

you were just raped, ladies and gentlemen, would your thinking be clearer or would it be less clear? If you came to that moment in your life where you realized that all your bad decisions, your selfishness, your self-absorption, your addiction, led you all the way down to this, sitting in your car with no pants on, how would you feel about yourself? Would you try to paint yourself in a better light or [worse] light?"

"[A] prosecutor may not appeal to the emotions, passions and prejudices of the jurors. . . . [S]uch appeals should be avoided because they have the effect of diverting the [jurors'] attention from their duty to decide the case on the evidence. . . . When the prosecutor appeals to emotions, he invites the jury to decide the case, not according to a rational appraisal of the evidence, but on the basis of powerful and irrelevant factors which are likely to skew that appraisal." (Internal quotation marks omitted.) *State* v. *Long*, supra, 293 Conn. 54; see also *State* v. *Bell*, 283 Conn. 748, 773, 931 A.2d 198 (2007). In evaluating impropriety, we must distinguish between comments intended to unduly arouse the jurors' emotions or to elicit the jurors' sympathies and statements intended to encourage the jurors to draw inferences from the evidence. *State* v. *Long*, supra, 54. Here, we find that certain of the prosecutor's statements exceeded asking the jury to make inferences and were intended to arouse the jurors' sympathies and emotions.

The prosecutor went beyond asking the jurors to draw inferences from the evidence presented at trial when she stated, in relevant part: "Rape doesn't cure you. If *you* were just raped, ladies and gentlemen, would *your* thinking be clearer or would it be less clear? If *you* came to that moment in *your* life where *you* realized that all *your* bad decisions, *your* selfishness, *your* self-absorption, *your* addiction, led *you* all the way down to this, sitting in *your* car with no pants on, how

would *you* feel about *yourself*? Would *you* try to paint *yourself* in a better light or a [worse] light?" (Emphasis added.) Although the statement does correspond with the defendant's argument that the victim had a motive for lying, instead of encouraging the jurors to form an objective determination on the basis of the defendant's and the victim's versions of the alleged incident, the prosecutor asked the jurors to put themselves in the victim's shoes, to speculate as to her thoughts and feelings and to make their decision based on how they might feel in a similar situation. The jurors' feelings about rape were not evidence; it was improper for the prosecutor to ask them to use such feelings in deciding the case. It is axiomatic that a prosecutor may not advance an argument that is intended solely to appeal to the jurors' emotions and to evoke sympathy for the victim; see *State* v. *Thompson*, 266 Conn. 440, 473–74, 832 A.2d 626 (2003); and that is precisely what the prosecutor attempted to do through her use of "you" in this statement.

2

We briefly address the defendant's argument that the prosecutor's use of "you" more than thirty times throughout her closing and rebuttal, beyond the instance discussed previously, violated the "golden rule." We disagree.

"The animating principle behind the prohibition on golden rule arguments is that jurors should be encouraged to decide cases on the basis of the facts as they find them, and reasonable inferences drawn from those facts, rather than by any incitement to act out of passion or sympathy for or against any party." *State* v. *Long*, supra, 293 Conn. 57–58. In the many instances where the prosecutor used "you" in her closing and rebuttal, aside from that discussed previously, the prosecutor used "you" in a way that the jurors could distinguish as a request for them to view evidence as a reasonable

person, and not as an appeal for them to empathize with the victim. For example, the prosecutor stated, in relevant part: "[The victim] said [the defendant] threatened, or she perceived that as a threat to injure her; would you? If someone held a knife to your throat, is that reasonable?" Further, the prosecutor stated, in relevant part: "Consent is not, I called 911 and I want to get outside but he won't let me. Are you inside voluntarily at that point? If you've called 911 to get you out of the house, are you there voluntarily?" As a final example, the prosecutor stated, in relevant part: "Perhaps the most compelling piece of evidence in this case is not what happened, according to [the victim], in [the defendant's] house, but what happened afterward. Why would you go to the hospital when you are free to leave and endure [that type of] examination?" In each of these examples, the prosecutor used "you," but she did so to direct the jurors to the evidence, not to draw their sympathies. For this reason we find no improper golden rule arguments beyond that discussed in part I A 1 of this opinion.

## B

We now turn to the defendant's contention that the prosecutor improperly discussed the habits of drug addicts and attempted to give expert opinion on the subject.[4] The defendant argues that the prosecutor

---

[4] We note that the defendant also argued that the prosecutor employed a "golden rule" argument in this statement. The state acknowledged in its brief that the prosecutor's use of "you" in this statement did reference the jurors personally, but argued that the prosecutor's action was not improper and, rather, permissibly asked the jurors to draw from their own life experiences, not their emotions. We conclude that although the prosecutor's use of "you" in this statement was not artful, it did not improperly appeal to the jurors' emotions.

Where a prosecutor asks the jury to make inferences from evidence in the case, the statement is not deemed an improper appeal to the jurors' emotions. See *State* v. *Bell,* supra, 283 Conn. 773 ("[T]he prosecutor was not appealing to the jurors' emotions or to their sympathies for the victim. Rather, he was asking the jurors to draw inferences from the evidence that had been presented at trial regarding the actions of the defendant and [a

argued facts not in the record and gave her own opinion about drug use in an effort to bolster her case. We agree.

An argument may be proper when it is "based on reasonable inferences drawn from the evidence . . . not [solely on] the prosecutor's opinion." *State* v. *Warholic*, 278 Conn. 354, 367, 897 A.2d 569 (2006). "Statements as to facts that have not been proven amount to unsworn testimony, which is not the subject of proper closing argument." *State* v. *Alexander*, 254 Conn. 290, 306, 755 A.2d 868 (2000). In *Alexander*, the court held that comments were inappropriate where a prosecutor stated, in relevant part: "Child molesters don't sexually assault their victim in front of witnesses. They wait until they're alone, isolated. They pick out a vulnerable child, such as an eight year old asleep in her bed. . . . Nor did [the victim] exaggerate. Nor did she have any motive to lie. . . . There's no motive for her to lie. . . . [Y]ou're supposed to believe that as a result of that comment [the victim] fabricated this whole incident to get back at him. I don't know of that many eight or nine year olds that are that sophisticated to fabricate a story involving sexual abuse." (Internal quotation marks omitted.) Id., 300–301. The court concluded that these remarks improperly provided an opinion that could not be reasonably inferred from the evidence.

Here, the prosecutor made a similar offer of her own opinion based on facts not in evidence. The prosecutor stated, in relevant part: "[I]f you know anything about

witness], based on the jurors' judgment of how a reasonable person would act under the specified circumstances."); see also *State* v. *Long*, supra, 293 Conn. 58 (noting that where prosecutor "intended to encourage the jurors to draw inferences from the evidence . . . presented at trial on the basis of the jurors' views as to how a reasonable [person] would act under the circumstances," statements were not inappropriate). Asking the jury to decide how a reasonable person would act is not improper and does not inappropriately put the jurors into a defendant's or another party's shoes. Here, that is what the prosecutor did. In this regard, the statement was not improper.

addiction and you know anybody in your life who struggled with it, all you want is your drugs. Your drugs, not any drugs, your drug of choice." As in *Alexander*, the prosecutor inserted her own opinion without any evidentiary basis. She provided the jury with her view as to the habits of drug addicts and their use preferences in order to make the victim appear more credible. The victim had testified that she wanted to leave the defendant's home because she does not use crack cocaine; she stated that once she had used her cocaine, her purpose for being with the defendant ended. It was the defendant's position that the victim wanted more drugs and offered sexual favors for the defendant's crack cocaine. The prosecutor attempted to bolster the veracity of the victim's testimony by adding her view on the habits of drug users, a view that would have made the defendant's version of events unlikely. There was no testimony at trial that drug addicts, *in general*, do not use different types of drugs. For the prosecutor to conclude before the jury that drug addicts, *in general*, only want their drug of choice and nothing else, and to ask the jurors to apply that unfounded conclusion when considering the victim's testimony, was improper.

## C

Finally, we turn to the defendant's assertion that the prosecutor inappropriately attempted to bolster the victim's credibility when discussing her reasons for agreeing to submit to the rape kit examination. The defendant argues that the prosecutor improperly attempted to instruct the jury in assessing the victim's credibility when she discussed possible reasons for a person to undergo the rape kit examination. We disagree.

"[A] prosecutor may not express his own opinion, directly or indirectly, as to the credibility of the witnesses. . . . Such expressions of personal opinion are a form of unsworn and unchecked testimony, and are

particularly difficult for the jury to ignore because of the prosecutor's special position." (Internal quotation marks omitted.) *State* v. *Thompson*, supra, 266 Conn. 462. "A prosecutor's voucher for a witness is particularly dangerous for two reasons. First, such comments may convey the impression that the prosecutor is aware of evidence supporting charges against the defendant of which the jury has no knowledge. . . . Second, the prosecutor's opinion carries with it the imprimatur of the [g]overnment and may induce the jury to trust the [g]overnment's judgment rather than its own view of the evidence." (Citation omitted; internal quotation marks omitted.) *State* v. *Alexander*, supra, 254 Conn. 305.

Contrary to the statements addressed previously, here the prosecutor's statements regarding the victim's reasons for submitting to the rape kit examination do pertain to the evidence presented at trial. She stated, in relevant part: "Why would you go to the hospital when you are free to leave and endure that type of examination? . . . And I don't mean to suggest that any of the gentlemen on the jury are insensitive to that type of examination, but please have a very open discussion about exactly what an examination like that would do to the female body, how that would feel. What exactly that type of an examination with certain things, without certain things, such as lubrication, exactly what that would do to the body, how that would feel." In her testimony, the victim described the various procedures applied during her rape kit examination and the effect they had on her. For example, she stated: "I guess it's a rape kit they did on me. . . . I took medicine for thirty days—that was very—I was very sick—HIV prevention medicine . . . . They gave me the morning after pill. And they gave me one painful shot in my arm for, I think, all the [sexually transmitted diseases] and stuff like that . . . ." In response to the prosecutor's question of how the rape kit examination felt, the victim

replied: "It, it was awful, honestly, it was really awful, very painful. From just already what I had went through, that was worse, it seemed like. It was, it was painful." Here, the prosecutor merely asked the jury to infer the effect of the rape kit examination from the victim's testimony regarding the physical pain she had experienced. Although the prosecutor's statements could have been worded with more care, the statements regarding the rape kit examination were not improper argument.

## II

Having reviewed the statements at issue, we turn to the question of whether the prosecutor's improper statements deprived the defendant of a fair trial. The defendant argues that he was substantially prejudiced by the prosecutor's statements, given the "number of improper comments and their repeated bearing on the credibility of the state's most critical witness, [the victim]." We disagree.

"To determine whether the defendant was deprived of his due process right to a fair trial, we must determine whether the sum total of [the prosecutor's] improprieties rendered the defendant's [trial] fundamentally unfair, in violation of his right to due process. . . . The question of whether the defendant has been prejudiced by prosecutorial [impropriety], therefore, depends on whether there is a reasonable likelihood that the jury's verdict would have been different absent the sum total of the improprieties." (Internal quotation marks omitted.) *State* v. *Moore*, supra, 293 Conn. 808. "[The] burden properly lies with the defendant to prove substantial prejudice." *State* v. *Alexander*, supra, 254 Conn. 302 n.11. In determining whether prosecutorial impropriety was so serious as to amount to a denial of due process, our Supreme Court has focused on six factors: "[T]he extent to which the [impropriety] was *invited* by defense conduct or argument . . . the *severity* of the

[impropriety] . . . the *frequency* of the [impropriety] . . . the *centrality* of the [impropriety] to the critical issues in the case . . . the *strength* of the curative measures adopted . . . and the *strength* of the state's case." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987).

## A

We first address the prosecutor's improper statement in her rebuttal regarding the victim's state of mind on the night of the incident. Applying the *Williams* factors, we conclude that the statement did not deprive the defendant of his right to a fair trial. First, defense counsel in his closing argument invited the prosecutor's remarks by specifically pointing to the victim's "regret" as a motive for lying about the incident. See *State* v. *Long*, supra, 293 Conn. 51 (concluding defense counsel invited prosecutor's inappropriate remarks when prosecutor's "remark was part of a series of comments directly responding to defense counsel's repeated attacks on [the victim's] credibility during his closing argument"). Here, defense counsel stated, in relevant part: "[The victim]'s done things that she's regretted in the past while she's on drugs. She stole from . . . the man with whom she has a child. She did things, she admitted she's done things she regretted when she was on drugs. Do you think she regretted what happened that night?" Further, defense counsel in his closing argument addressed the victim's state of undress and mental state while on drugs, stating, in relevant part: "So, when the state asks you in their first opening—closing argument, when was the last time you . . . saw someone run out the house naked, there is a second part of that question, which is, when was the last time you or someone that ran out [of] the house was naked, or on crack, or on cocaine, or doing drugs? Isn't the more reasonable version . . . [s]he smoked crack and ran

out of the house?" Finally, defense counsel stated, in discussing the victim's mental state: "Again, did she regret what was going on there? Was it drugs? Was it alcohol? Was it a little bit of both?" On the basis of these statements in defense counsel's closing, it is evident that the prosecutor was responding to them in her rebuttal.

Looking to the next prongs of the *Williams* test, we conclude that the statement was isolated and not so severe as to influence the jury improperly. Although we do not condone the prosecutor's appeal to the jurors' emotions, the prosecutor did not frequently use "golden rule" arguments. Contrary to the thirty or more times the defendant claims that the prosecutor employed "golden rule" arguments, we found that the prosecutor violated the rule only once. The prosecutor's statement can be isolated from her other uses of "you" throughout her closing and rebuttal. Further, the statement was not severe enough to influence the jury improperly. In determining the severity of an improper statement, our Supreme Court has noted that it considers it "highly significant [when] defense counsel fail[s] to object to any of the improper remarks, request curative instructions, or move for a mistrial." *State* v. *Thompson*, supra, 266 Conn. 479. The court has held that "only instances of grossly egregious [impropriety] will be severe enough to mandate reversal." Id., 480. Here, defense counsel did not object to the prosecutor's statements in either her closing or her rebuttal argument. Nor did he ask for curative instructions. Following the court's reasoning in *Thompson*, defense counsel's lack of objection to the improper statement demonstrates that the statement was not so severe as to mandate reversal of the judgment of conviction.

The court took curative measures to prevent the jury from being unduly swayed. See *State* v. *Stevenson*, 269 Conn. 563, 598, 849 A.2d 626 (2004) (instruction was

sufficient for fair trial "even though the trial court gave no specific curative instructions, [and] the court reminded the jury in its general instructions, both prior to trial and again following final argument, that what the lawyers may have said to you in argument about the facts is not testimony or evidence" [internal quotation marks omitted]). It is within a jury's purview to determine a witness' credibility, and the court instructed the jury in this case to that effect. The court stated, in relevant part: "You should, in short, size up the witnesses and make your own judgment as to their credibility and decide what part, all, some, or none of any particular witness' testimony you will believe . . . . You should use all of your experience and your knowledge of human nature and of the motives that influence and control human conduct." The court clearly instructed the jurors that "[y]ou may not go outside the evidence to find the facts. This means you may not resort to guesswork, conjecture, or suspicion, and you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy." Finally, the court provided the jury with instructions on how to assess the arguments made by counsel, stating, in relevant part: "In reaching your verdict you should consider all the testimony and exhibits received into evidence, but certain things are not evidence and you may not consider them in deciding what the facts are. These include the arguments and statements by counsel. What they have said in their closing arguments and at other times is intended to help you interpret the evidence, but it's not evidence." While the court did not specifically point to the prosecutor's statement, it provided the jury with sufficient foundation on what was evidence and how to analyze it properly.

Finally, we look to the remaining *Williams* factors, the centrality of the impropriety to the critical issues in the case and the strength of the state's case. It is

clear that credibility was a critical issue in this case, and it is undeniable that the prosecutor's statement attempted to influence the jurors to find the victim's version of the incident more credible than the defendant's. See *State* v. *Jones*, 139 Conn. App. 469, 480–84, 56 A.3d 724 (2012) (noting that credibility is central issue where case relies entirely on testimony of victim), cert. granted on other grounds, 307 Conn. 957, 958, 59 A.3d 1192 (2013). The case here differs from *Jones* in that the state did not rely entirely on testimony; there was also physical evidence presented that supported the state's case. The state presented physical evidence from the rape kit examination and from the defendant's home, in addition to the testimony of a nurse and two forensic science examiners from the state.[5] All of this evidence supported the victim's version of the incident and contradicted the defendant's version. "[W]e have never stated that the state's evidence must have been overwhelming in order to support a conclusion that prosecutorial [impropriety] did not deprive the defendant of a fair trial." *State* v. *Thompson*, supra, 266 Conn. 483. The strength of the state's case outweighed the possible effect of the impropriety on the jurors' perception of the victim's credibility.

In light of defense counsel's statements inviting the prosecutor's impropriety, the isolated nature of the prosecutor's impropriety, the lack of severity of the statement, the sufficiency of the court's curative instructions and the strength of the state's case, the defendant's claim fails under the *Williams* test.

B

Second, we turn to the prosecutor's statement regarding the habits of drug addicts. First, during his closing

[5] Nurse Brittany Tartaglia testified, in relevant part: "[W]e did note that there was redness and soreness around the labia, around the vagina, and the doctor—see, when the doctor addressed the cervix, he assessed that there were abrasions. . . . [The victim] was wincing in pain, and . . . she was very sore and there were small cuts or abrasions."

argument, defense counsel invited the prosecutor's statement by addressing the issue of drug addicts' preferences in getting high. Defense counsel stated, in relevant part: "Think about the physical evidence. Think about how [the victim] did drugs. She fully admitted she did drugs; she did some cocaine but only cocaine. Is that reasonable? Is that believable? A person who is in the throes of a drug addiction, she was doing drugs, she wasn't going to her meetings. The plan that night with [the defendant] was to get high . . . . Is it really open for debate that after the cocaine was done and the crack came out, she said no, no thanks, I'll pass on that, not my cup of tea. I don't want any of that. You can do that; I'm going to sit right here? Is that reasonable? Is that believable?" The victim stated very clearly in her testimony that she did not use crack cocaine on the night of the incident,[6] and, although the police recovered a crack pipe from the defendant's home, neither the state nor defense counsel introduced evidence that the victim had used the pipe. See *State* v. *Long*, supra, 293 Conn. 51 (defense counsel invited prosecutor's inappropriate remark when prosecutor's "remark was part of a series of comments directly responding to defense [counsel]").

Turning to the next three *Williams* factors, this statement was a single instance of the prosecutor's improperly testifying as to facts not in evidence, and the comment was not so severe that it could not be cured with proper instruction. See *State* v. *Thompson*, supra, 266 Conn. 480. The statement was short in duration and did not encompass multiple, unfounded factual assertions. Rather, the prosecutor offered her opinion on the habits of drug addicts in only one portion of her rebuttal argument. See *State* v. *Quint*, 97 Conn. App. 72, 93, 904 A.2d 216 (concluding misconduct was not severe where

---

[6] The victim stated, on cross-examination: "I don't do hard. I don't do crack. I only sniff cocaine and put it in a cigarette."

"it was confined to only a portion of the closing argument"), cert. denied, 280 Conn. 924, 908 A.2d 1089 (2006). As discussed in part II A of this opinion, the court instructed the jurors on how to assess arguments made by counsel, stating, in relevant part: "In reaching your verdict you should consider all the testimony and exhibits received into evidence, but certain things are not evidence and you may not consider them in deciding what the facts are. These include the arguments and statements by counsel. What they have said in their closing arguments and at other times is intended to help you interpret the evidence, but it's not evidence." A court's instructions need not specifically relate to the misconduct in order to cure any possible prejudice caused by it. See *State* v. *Quint*, supra, 93–94 ("[a]lthough the court did not issue any specific curative instruction, its preliminary and final instructions to the jury likely cured the misconduct, as it reminded the jury that it alone determine[s] the weight, the effect, the value of the evidence, as well as the credibility and believability of the witnesses" [internal quotation marks omitted]).

Finally, we turn to the remaining *Williams* factors, the centrality of the misconduct to critical issues in the case and the strength of the state's case. Here, the victim's drug use was a critical issue in the case, as both the defendant's and the victim's versions of the incident were dependent on their conflicting descriptions of the victim's drug use.[7] As discussed in part II A of this opinion, the strength of the state's case outweighs any possible prejudice the prosecutor's inappropriate statement may have caused. The state presented physical and testimonial evidence to support the victim's assertion that she did not use crack cocaine. The

---

[7] The defendant claimed that the victim used crack cocaine on the night of the incident and offered him sexual favors for more drugs. The victim testified that she uses only cocaine, not crack, and that she wanted to leave the defendant's home after she consumed her cocaine.

victim stated very clearly in her testimony that she did not use crack cocaine on the night of the incident, and there was no evidence that the victim used the crack pipe recovered from the defendant's home following the incident. Further, the state presented the results of the rape kit examination, and the nurse who administered the test testified that it showed evidence of trauma to the victim's labia, vagina, cervix and rectum; this evidence supported the victim's version of the incident.[8] The strength of the state's physical evidence pertaining both to the victim's drug use on the night of the incident and to her physical condition after the incident outweighs any possible prejudice the prosecutor's statement regarding the habits of drug addicts may have caused.

As instructed by State v. Williams, supra, 204 Conn. 538, "[i]n determining whether the defendant was denied a fair trial we must view the prosecutor's comments in the context of the entire trial." "[A] reviewing court must apply the Williams factors to the entire trial, because there is no way to determine whether the defendant was deprived of his right to a fair trial unless the misconduct is viewed in light of the entire trial." (Internal quotation marks omitted.) State v. Skakel, 276 Conn. 633, 743, 888 A.2d 985, cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L. Ed. 2d 428 (2006). Viewing the two improper statements cumulatively, they did not deprive the defendant of a fair trial. The challenged remarks by the prosecutor, to the extent that they were inappropriate, were invited by counsel, and although they did address critical issues in the case, they were infrequent, confined to rebuttal argument and did not evidence a pattern of misconduct sufficient to deprive the defendant of his right to a fair trial. The defendant did not object to the statements at the time of the

---

[8] See footnote 5 of this opinion.

prosecutor's argument, nor did he seek specific, curative instructions. The court's general instructions that the jury must decide the case on the basis of its recollection of the evidence before it and that the arguments of counsel were not binding on the jury's determination of the facts were sufficient to cure any harm caused by the remarks at issue. See *State* v. *Brown*, 71 Conn. App. 121, 137–38, 800 A.2d 674 (concluding that multiple incidents of misconduct did not cumulatively deny defendant fair trial), cert. denied, 261 Conn. 940, 808 A.2d 1133 (2002).

The judgment is affirmed.

In this opinion SHELDON, J., concurred.

ESPINOSA, J., concurring. I agree with the outcome reached by the majority as well as most of the analysis in its well reasoned decision. I write separately, however, to express my disagreement with the analysis in part I A 1 of the majority opinion that addresses one of the "golden rule" claims of the defendant, Milton Campbell.

Our Supreme Court recognized in *State* v. *Bell*, 283 Conn. 748, 931 A.2d 198 (2007), that a prosecutor may not ask the jury "to put itself in the place of the victim, the victim's family, or a potential victim of the defendant"; id., 772; in an effort to appeal to the emotions, passions and prejudices of the jury. Arguments of this type are improper because they tend to divert the jury's attention from a rational appraisal of the evidence. Id., 773; see also *State* v. *Warholic*, 278 Conn. 354, 376, 897 A.2d 569 (2006). "The animating principle behind the prohibition on golden rule arguments is that jurors should be encouraged to decide cases on the basis of the facts as they find them, and reasonable inferences drawn from those facts, rather than by any incitement to act out of passion or sympathy for or against any

party." *State* v. *Long*, 293 Conn. 31, 57–58, 975 A.2d 660 (2009).

In evaluating claims of prosecutorial impropriety arising from the statements made by a prosecutor, a reviewing court does not evaluate the challenged statements in artificial isolation but in the context of the evidence and the arguments of which they are a part. See *State* v. *Francione*, 136 Conn. App. 302, 325, 46 A.3d 219, cert. denied, 306 Conn. 903, 52 A.3d 730 (2012). Only when such statements are considered in appropriate context can a court accurately analyze the dispositive issue of whether the statements had an improper effect on the jury.

Both our Supreme Court and this court have upheld the propriety of prosecutorial arguments that have invited jurors to put themselves in the place of a party for the purpose of evaluating the reasonableness of the party's conduct. See *State* v. *Long*, supra, 293 Conn. 58 (argument concerning victim encouraged jurors to draw inferences from evidence on basis of jurors' views as to how similarly situated victim would act under circumstances); *State* v. *Bell*, supra, 283 Conn. 773 (arguments concerning defendant and state's witness invited jurors to draw inferences from evidence on basis of jurors' views as to how similarly situated persons would act under circumstances); *State* v. *Ovechka*, 118 Conn. App. 733, 746, 984 A.2d 796 (argument concerning victim asked jurors to draw inferences from evidence on basis of jurors' views as to how similarly situated victim would act under circumstances), cert. denied, 295 Conn. 905, 989 A.2d 120 (2010).

In the present case, during closing argument, the defendant's attorney argued that the victim was not credible with regard to any of the events at issue because there was evidence that she lied to the police and emergency personnel immediately after she fled the

defendant's apartment and called 911. The defendant's attorney drew the jury's attention to the undisputed evidence[1] that the victim attempted to conceal certain facts about her encounter with the defendant on November 5, 2009, including the fact that, prior to the alleged assault, she picked up the defendant at his home, purchased alcohol and cocaine and voluntarily returned to the defendant's home where she ingested alcohol and drugs with him. In pointing out untruthful statements the victim made to the police, the defendant's attorney referred to the victim's initial statement to the police that, prior to the assault, the defendant had forced her into his home at knifepoint.

The prosecutor, during rebuttal argument, referred to the ample evidence of the victim's history of using illegal drugs. She responded to the argument by the defendant's attorney, in relevant part, as follows: "[P]art of [the victim's] addiction is that she made bad choices. And guess what? Being raped didn't cure her of that addiction. It didn't cure her of making cloudy decisions; isn't that amazing. Rape doesn't cure you. If you were just raped, ladies and gentlemen, would your thinking be clearer or would it be less clear? If you came to that moment in your life where you realized that all your bad decisions, your selfishness, your self-absorption, your addiction, led you all the way down to this, sitting in your car with no pants on, how would you feel about yourself? Would you try to paint yourself in a better light or a [worse] light? So, when she calls that 911 operator, how does she paint herself? How does she portray herself? I was dragged in the house. I was held at knifepoint. . . . [S]omeone come and help me. Get

---

[1] The victim, in her trial testimony, admitted that she was not truthful to the 911 operator when she stated that the defendant forced her into his residence, but that she told the responding officers the truth about what had occurred. She said part of what motivated her initial statement was the fact that she was using illegal drugs and that she did not want her boyfriend to know she was at the defendant's house for that illicit purpose.

me out of here. And then she has a moment and the cops come; you know what, I went there. I went there. I did it." The prosecutor proceeded to question whether the defendant's attorney essentially had argued that the victim was not credible because she was a drug user or because she voluntarily had engaged in drug related activities with the defendant prior to the assault.

In my view, the challenged statements, when considered in the context of the evidence presented at trial, the arguments by the defendant's attorney and the prosecutor's rebuttal argument, reflect that the prosecutor invited the jurors to put themselves in the place of the victim for the limited purpose of evaluating the significance of and reasonableness of the false statements that she made immediately after the assault occurred. The prosecutor's invitation to consider the victim's mindset did not occur in isolation; it immediately preceded a discussion of the fact that the victim provided false information to the 911 operator concerning her presence at the defendant's home. Consistent with the victim's trial testimony concerning her false statements to the 911 operator, the prosecutor argued that the victim's false statements did not suggest a fabricated claim of sexual assault by asking the jury to consider that her untruthfulness to the 911 operator was motivated by an initial desire merely to portray herself in a better light following the assault. In so arguing, the prosecutor invited the jurors to draw inferences from the victim's statements to the police based on their views as to how a reasonable person in the victim's position might act in similar circumstances.

Thus, I would conclude that the argument was based on the evidence and that it did not suggest an appeal to the emotions, passions or prejudices of the jurors. Relying on *Long*, *Bell* and *Ovechka*, I would conclude that the argument was not an instance of impropriety.

For the foregoing reasons, I respectfully agree with the outcome reached by the majority, but not with the entirety of its analysis, as described previously.